# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | |
|---|---|
| Ocean Semiconductor LLC,<br><br>     Plaintiff<br><br>v.<br><br>NVIDIA Corporation ("NVIDIA"),<br><br>     Defendant. | Civil Action No.: 6:20-cv-1211<br><br>JURY TRIAL DEMANDED<br><br>PATENT CASE |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Ocean Semiconductor LLC ("Ocean Semiconductor" or "Plaintiff") files this Complaint against NVIDIA Corporation ("NVIDIA" or "Defendant"), seeking damages and other relief for patent infringement, and alleges with knowledge to its own acts, and on information and belief as to other matters, as follows:

## NATURE OF THE ACTION

1. This is an action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq*.

## THE PARTIES

2. Plaintiff Ocean Semiconductor is a limited liability company organized and existing under the laws of the State of Delaware, and its registered agent for service of process in Delaware is Rita Carnevale, 717 N. Union Street, Wilmington, DE 19805.

3.      On information and belief, Defendant NVIDIA is a corporation organized and existing under the laws of Delaware, with its principal place of business at 2701 San Tomas Expressway, Santa Clara, CA 95050. NVIDIA is registered with the State of Texas and may be served with process through its registered agent, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 E. 7th St., Suite 620, Austin, TX 78701. On information and belief, NVIDIA has a regional office in this District, including at least at 11001 Lakeline Blvd., Building 2, Suite 100, Austin, TX 78717.

4.      On information and belief, Defendant NVIDIA sells, offers to sell, and/or uses products and services throughout the United States, including in this judicial District, and introduces infringing products and services into the stream of commerce knowing that they would be sold and/or used in this judicial District and elsewhere in the United States.

5.      Plaintiff Ocean Semiconductor is the assignee and owner of the patents at issue in this action: U.S. Patents Nos. 6,660,651, 6,725,402, 6,907,305, 6,968,248, 8,120,170, 8,847,383, 7,080,330, 6,836,691, and 8,676,538 (collectively, the "Asserted Patents").  Ocean Semiconductor holds all substantial rights, title, and interest in the Asserted Patents, including the exclusive right to sue NVIDIA for infringement and recover damages, including damages for past infringement.

6.      Plaintiff Ocean Semiconductor seeks monetary damages and prejudgment interest for Defendant's past and ongoing direct and indirect infringement of the Asserted Patents.

7.      Defendant NVIDIA is a semiconductor company that designs, develops, sells, offers to sell, and imports into the United States semiconductor products in the communications, internet of things, automotive, computer, and consumer electronics industry ("Accused Products").

2

8.      Defendant NVIDIA, which has its own design centers in the United States
(including a facility in Austin, Texas), contracts with third-party semiconductor fabricators or
foundries ("NVIDIA Foundry Partners") that own, operate, or control semiconductor fabrication
plants ("fabs") within and/or outside of the United States ("International Facilities") to produce
the Accused Products.  One such NVIDIA Foundry Partner is United Microelectronics Corp.
("UMC").  *See, e.g.*, "NVIDIA Increases Foundry Outsourcing to TSMC and UMC," *available
at* https://www.techpowerup.com/60649/nvidia-increases-foundry-outsourcing-to-tsmc-and-umc
(last accessed October 12, 2020).   Another NVIDIA Foundry Partner is Taiwan Semiconductor
Manufacturing Company Ltd. ("TSMC").  *See* "Nvidia plans for Ampere, Hopper with TSMC
orders," *available at* https://techreport.com/news/3470476/nvidia-tsmc-5nm-7nm-ampere-
hopper/ (last accessed October 12, 2020).  Both UMC and TSMC have a contractual partnership
with NVIDIA to design, develop, or manufacture semiconductor products including integrated
circuits for NVIDIA.

9.      On information and belief, Defendant NVIDIA (directly or through one or more
of its Foundry Partners such as UMC and TSMC) has a contractual relationship with Applied
Materials, Inc. ("Applied Materials") (*see, e.g.*, UMC's YY Chen video, *available at*
https://www.appliedmaterials.com/automation-software (last accessed October 12, 2020); *see
also* Applied Materials' job posting for "TSMC F15 E3 project," *available at*
http://www.mse.ntu.edu.tw/attachments/article/154/AMT_Summer%20Student%20Program_Job
%20Post_2013.pdf (last accessed October 12, 2020); *see also* "NVIDIA to transfer 28nm chip
orders to UMC," *available at* https://www.digitimes.com/news/a20170724PD214.html (last
visited Oct. 12, 2020); *see also* "BRIEF-UMC orders machinery equipment from Applied
Materials' unit," *available at* https://www.reuters.com/article/brief-umc-orders-machinery-

3

equipment-fro/brief-umc-orders-machinery-equipment-from-applied-materials-unit-idUKH9N1M601Z (last visited Oct. 12, 2020); *see also* "BRIEF-TSMC Orders Machinery Equipment Worth T\$1.06 Billion From Applied Materials," *available at* https://www.reuters.com/article/brief-tsmc-orders-machinery-equipment-wo/brief-tsmc-orders-machinery-equipment-worth-t1-06-billion-from-applied-materials-idUSS7N1QP04B (last visited Oct. 12, 2020)), and PDF Solutions Inc. ("PDF Solutions") (*e.g.*, "Taiwan Semiconductor Manufacturing Company adopts PDF Solutions yield improvement technology," *available at* https://www.edn.com/taiwan-semiconductor-manufacturing-company-adopts-pdf-solutions-yield-improvement-technology/ (last accessed Oct. 12, 2020); *see also* "Exensio: Big Data in the Fab," *available at* https://semiwiki.com/eda/4351-exensio-big-data-in-the-fab/ (last accessed Oct. 12, 2020), and one or more of the NVIDIA Foundry Partners (e.g., UMC and/or TSMC) employ Applied Materials' semiconductor fabrication or manufacturing equipment, platforms, and/or framework, including Applied Materials' E3 system, including the E3 factory advanced/automation process control ("APC") platform hardware and/or software (collectively, "E3 system"), PDF Solutions' Exensio hardware and/or software (collectively, "Exensio system"), and/or other advanced/automation process control system and platform hardware and/or software to design, develop, and/or manufacture Defendant NVIDIA's semiconductor devices, including integrated circuits.

10. Upon information and belief, UMC and/or TSMC employ Applied Materials' and/or PDF Solutions' semiconductor fabrication or manufacturing equipment, platforms, and/or framework (e.g., Applied Materials' E3 system and/or PDF Solutions' Exensio system) at their manufacturing facilities. Applied Materials has received supplier awards and recognition from UMC. *See, e.g.,* https://www.appliedmaterials.com/files/nanochip-

journals/nanochip_v7_iss2_112912.pdf (last accessed October 12, 2020); *see also*

https://www.appliedmaterials.com/nanochip/nanochip-technology-journal/july-2014 (last visited

October 12, 2020); *see also* https://www.appliedmaterials.com/files/nanochip-journals/nanochip-

fab-solutions-12-2014-revised.pdf (last accessed October 12, 2020).  Applied Materials also has

received supplier awards and recognition from TSMC.  *See, e.g.*, "TSMC Recognizes

Outstanding Suppliers at Supply Chain Management Forum," *available at*

https://pr.tsmc.com/english/news/1873 (last accessed October 12, 2020).  On information and

belief, TSMC also employs PDF Solutions' Exensio system at TSMC's manufacturing facilities.

11.    On information and belief, Defendant NVIDIA (directly or through its NVIDIA

Foundry Partners such as UMC and/or TSMC) employs Applied Materials' E3 system and/or

PDF Solutions' Exensio system to design, develop or manufacture one or more systems,

products, devices, and integrated circuits for importation into the United States for use, sale,

and/or offer for sale in this District and throughout the United States, including, but not limited

to, graphics cards (e.g. GEFORCE RTX models (including, but not limited to, GEFORCE RTX

2060, 2060 SUPER, 2070, 2070 SUPER, 2080, 2080 SUPER, 3070, 3080, and 3090),

GEFORCE GTX models (including, but not limited to, GEFORCE GTX 1650, 1650 SUPER,

1660, and 1660 Super), GEFORCE GTX TI models (including, but not limited to, GEFORCE

GTX 1650 TI and 1660 TI), TITAN RTX models (including, but not limited to, TITAN RTX ,

TITAN XP models, ZOTAC models, GIGABYTE models, ASUS models, MSI models, and

EVGA models), SHIELD devices, SHIELD TV media streamers, Jetson developer kits (e.g.,

NANO, NANO 2GB, and NANO MODULE), QUADRO professional graphics cards (e.g.,

QUADRO RTX 8000, QUADRO RTX 8000 NVLink HB Bridge, QUADRO RTX 6000,

QUADRO RTX 6000 NVLink HB Bridge, QUADRO GV100, QUADRO GV100 Bridge, and

QUADRO Sync II), DGX AI Workstations, products manufactured at, for example, 5nm, 7nm, 28nm, and/or 90nm technology node, and similar products, devices, systems, components of systems, and/or integrated circuit ("NVIDIA APC Products").

12.     On information and belief, Defendant NVIDIA (directly or through its NVIDIA Foundry Partners such as UMC and/or TSMC) uses Applied Materials' E3 system and/or PDF Solutions' Exensio system to design, develop, or manufacture the NVIDIA APC Products for importation into the United States for use, sale, and/or offer for sale in this district and throughout the United States.

13.     On information and belief, Defendant NVIDIA, directly and/or through one or more of the NVIDIA Foundry Partners (e.g., UMC and/or TSMC), also employs Applied Materials' SmartFactory system or platform, including Advanced Productivity Family solutions and Smart Scheduling (collectively, "SmartFactory"), camLine's semiconductor fabrication or manufacturing solutions, including camLine's LineWorks production automation solution (e.g., LineWorks eCap and LineWorks PULSE modules) (collectively, "LineWorks system"), and/or other similar proprietary or third-party scheduling and dispatching platform hardware and/or software (e.g., with similar technical and functional features) to design, develop, and/or manufacture Defendant NVIDIA's semiconductor devices, including integrated circuits.  *See, e.g.*, "UMC Shares Success With The Applied SmartFactory®," *available at* https://www.appliedmaterials.com/files/umc-china_0.mp4 (last accessed Oct. 12, 2020); *see also* "LineWorks Product," *available at*  https://www.all-electronics.de/wp-content/uploads/migrated/document/97654/infodirectccamlineproductcatalog.pdf (last accessed Oct. 12, 2020) ("Customers … > TSMC").

14.     On information and belief, Defendant NVIDIA (directly or through its NVIDIA Foundry Partners such as UMC and/or TSMC) employs Applied Materials' SmartFactory, camLine's LineWorks system, and/or other similar proprietary or third-party scheduling and dispatching platform hardware and/or software (e.g., with similar technical and functional features) to design, develop or manufacture one or more systems, products, devices, and integrated circuits for importation into the United States for use, sale, and/or offer for sale in this District and throughout the United States, including, but not limited to, graphics cards (e.g. GEFORCE RTX models (including, but not limited to, GEFORCE RTX 2060, 2060 SUPER, 2070, 2070 SUPER, 2080, 2080 SUPER, 3070, 3080, and 3090), GEFORCE GTX models (including, but not limited to, GEFORCE GTX 1650, 1650 SUPER, 1660, and 1660 Super), GEFORCE GTX TI models (including, but not limited to, GEFORCE GTX 1650 TI and 1660 TI), TITAN RTX models (including, but not limited to, TITAN RTX , TITAN XP models, ZOTAC models, GIGABYTE models, ASUS models, MSI models, and EVGA models), SHIELD devices, SHIELD TV media streamers, Jetson developer kits (e.g., NANO, NANO 2GB, and NANO MODULE), QUADRO professional graphics cards (e.g., QUADRO RTX 8000, QUADRO RTX 8000 NVLink HB Bridge, QUADRO RTX 6000, QUADRO RTX 6000 NVLink HB Bridge, QUADRO GV100, QUADRO GV100 Bridge, and QUADRO Sync II), DGX AI Workstations, products manufactured at, for example, 5nm, 7nm, 28nm, and/or 90nm technology node, and similar products, devices, systems, components of systems, and/or integrated circuit ("NVIDIA Scheduling Products").

15.     On information and belief, Defendant NVIDIA (directly or through its NVIDIA Foundry Partners such as UMC and/or TSMC) uses Applied Materials' SmartFactory and/or other similar proprietary or third-party scheduling and dispatching platform hardware and/or

software (e.g., with similar technical and functional features) to design, develop, or manufacture

the NVIDIA Scheduling Products for importation into the United States for use, sale, and/or

offer for sale in this district and throughout the United States.

16.     On information and belief, Defendant NVIDIA (directly and/or through its

NVIDIA Foundry Partners such as UMC and/or TMC) has a contractual relationship with ASML

Holding N.V. and/or its subsidiaries ("ASML") (*see, e.g.*, LinkedIn Profile for Spencer Lin,

Operation Manager at ASML, *available at* https://www.linkedin.com/in/spencer-lin-a48a0082/

(last visited Oct. 12, 2020); LinkedIn Profile for Leo Li, Product Engineer at ASML, *available at*

https://www.linkedin.com/in/leo-li-74222754/ (last visited Oct. 12, 2020); LinkedIn Profile for

Tsung Ming C., Applicant Engineer at ASML, *available at* https://www.linkedin.com/in/tsung-

ming-c-49b4b77/ (last visited Oct. 12, 2020); LinkedIn Profile for Vince Liu, Product Manager

at ASML, *available at* https://www.linkedin.com/in/vince-liu-4820b149/ (last visited Oct. 12,

2020); and LinkedIn Profile for Henry Yeh, Applicant Engineer at ASML, *available at*

https://www.linkedin.com/in/heavyyeh/ (last visited Oct. 12, 2020)), and that one or more of the

NVIDIA Foundry Partners (e.g., UMC and/or) employ ASML's semiconductor fabrication or

manufacturing equipment and/or platforms (e.g., ASML's TWINSCAN system hardware and

software or "TWINSCAN") to design, develop, and/or manufacture Defendant NVIDIA's

semiconductor products and devices, such as graphics cards (e.g. GEFORCE RTX models

(including, but not limited to, GEFORCE RTX 2060, 2060 SUPER, 2070, 2070 SUPER, 2080,

2080 SUPER, 3070, 3080, and 3090), GEFORCE GTX models (including, but not limited to,

GEFORCE GTX 1650, 1650 SUPER, 1660, and 1660 Super), GEFORCE GTX TI models

(including, but not limited to, GEFORCE GTX 1650 TI and 1660 TI), TITAN RTX models

(including, but not limited to, TITAN RTX , TITAN XP models, ZOTAC models, GIGABYTE

models, ASUS models, MSI models, and EVGA models), SHIELD devices, SHIELD TV media streamers, Jetson developer kits (e.g., NANO, NANO 2GB, and NANO MODULE), QUADRO professional graphics cards (e.g., QUADRO RTX 8000, QUADRO RTX 8000 NVLink HB Bridge, QUADRO RTX 6000, QUADRO RTX 6000 NVLink HB Bridge, QUADRO GV100, QUADRO GV100 Bridge, and QUADRO Sync II), DGX AI Workstations, products manufactured at, for example, 5nm, 7nm, 28nm, and/or 90nm technology node, and similar products, devices, systems, components of systems, and/or integrated circuit ("NVIDIA TWINSCAN Products").  *See, e.g.*, "BRIEF-Taiwan's UMC orders equipment from ASML for T\$657 mln," *available at* https://www.reuters.com/article/umc-corp-asml-holding-brief/brief-taiwans-umc-orders-equipment-from-asml-for-t657-mln-idUSS7N0P700I20140728 (last accessed October 12, 2020); *see also* "UMC buys equipment from ASML," *available at* https://www.digitimes.com/news/a20160621PM200.html (last accessed October 12, 2020); *see also* "ASML apparently beats Nikon for UMC's huge 300-mm scanner order," *available at* https://www.eetimes.com/asml-apparently-beats-nikon-for-umcs-huge-300-mm-scanner-order/ (last accessed October 12, 2020); *see also* "ASML shares gain after reports of large TSMC order," *available at* https://seekingalpha.com/news/3636158-asml-shares-gain-after-reports-of-large-tsmc-order (last visited Oct. 12, 2020); *see also* "ASML's NXE Platform Performance," *available at*  http://euvlsymposium.lbl.gov/pdf/2013/pres/RudyPeeters.pdf (last visited Oct. 12, 2020).

17.     On information and belief, Defendant NVIDIA (directly or through its NVIDIA Foundry Partners such as UMC and/or TSMC) uses ASML's TWINSCAN platform and/or its software to design, develop, or manufacture the NVIDIA TWINSCAN Products for importation

into the United States for use, sale, and/or offer for sale in this district and throughout the United States.

18.   On information and belief, Defendant NVIDIA (directly and/or through its NVIDIA Foundry Partners) has a contractual relationship with ASML and/or its subsidiaries (*see, e.g.*, LinkedIn Profile for Spencer Lin, Operation Manager at ASML, *available at* https://www.linkedin.com/in/spencer-lin-a48a0082/ (last visited Oct. 12, 2020); LinkedIn Profile for Leo Li, Product Engineer at ASML, *available at* https://www.linkedin.com/in/leo-li-74222754/ (last visited Oct. 12, 2020); LinkedIn Profile for Tsung Ming C., Applicant Engineer at ASML, *available at* https://www.linkedin.com/in/tsung-ming-c-49b4b77/ (last visited Oct. 12, 2020); LinkedIn Profile for Vince Liu, Product Manager at ASML, *available at* https://www.linkedin.com/in/vince-liu-4820b149/ (last visited Oct. 12, 2020); and LinkedIn Profile for Henry Yeh, Applicant Engineer at ASML, *available at* https://www.linkedin.com/in/heavyyeh/ (last visited Oct. 12, 2020)), and that one or more of the NVIDIA Foundry Partners employ ASML's semiconductor fabrication or manufacturing equipment and/or platforms (e.g., ASML's YieldStar metrology and inspection system hardware and software) to design, develop, and/or manufacture Defendant NVIDIA's semiconductor products and devices, such as graphics cards (e.g. GEFORCE RTX models (including, but not limited to, GEFORCE RTX 2060, 2060 SUPER, 2070, 2070 SUPER, 2080, 2080 SUPER, 3070, 3080, and 3090), GEFORCE GTX models (including, but not limited to, GEFORCE GTX 1650, 1650 SUPER, 1660, and 1660 Super), GEFORCE GTX TI models (including, but not limited to, GEFORCE GTX 1650 TI and 1660 TI), TITAN RTX models (including, but not limited to, TITAN RTX , TITAN XP models, ZOTAC models, GIGABYTE models, ASUS models, MSI models, and EVGA models), SHIELD devices, SHIELD TV media streamers, Jetson developer

10

kits (e.g., NANO, NANO 2GB, and NANO MODULE), QUADRO professional graphics cards

(e.g., QUADRO RTX 8000, QUADRO RTX 8000 NVLink HB Bridge, QUADRO RTX 6000,

QUADRO RTX 6000 NVLink HB Bridge, QUADRO GV100, QUADRO GV100 Bridge, and

QUADRO Sync II), DGX AI Workstations, products manufactured at, for example, 5nm, 7nm,

28nm, and/or 90nm technology node, and similar products, devices, systems, components of

systems, and/or integrated circuit, and similar systems, products, devices, and integrated circuits

("NVIDIA YieldStar Products").  *See, e.g.*, "BRIEF-Taiwan's UMC orders equipment from

ASML for T\$657 mln," *available at* https://www.reuters.com/article/umc-corp-asml-holding-

brief/brief-taiwans-umc-orders-equipment-from-asml-for-t657-mln-idUSS7N0P700I20140728

(last accessed October 12, 2020); *see also* "UMC buys equipment from ASML," *available at*

https://www.digitimes.com/news/a20160621PM200.html (last accessed October 12, 2020); *see*

*also* "ASML apparently beats Nikon for UMC's huge 300-mm scanner order," *available at*

https://www.eetimes.com/asml-apparently-beats-nikon-for-umcs-huge-300-mm-scanner-order/

(last accessed October 12, 2020); *see also* "ASML shares gain after reports of large TSMC

order," *available at* https://seekingalpha.com/news/3636158-asml-shares-gain-after-reports-of-

large-tsmc-order (last visited Oct. 12, 2020); *see also* "ASML's NXE Platform Performance,"

*available at*  http://euvlsymposium.lbl.gov/pdf/2013/pres/RudyPeeters.pdf (last visited Oct. 12,

2020).

19.     On information and belief, Defendant NVIDIA (directly or through its NVIDIA

Foundry Partners) uses ASML's YieldStar platform and/or its software to design, develop, or

manufacture the NVIDIA YieldStar Products for importation into the United States for use, sale,

and/or offer for sale in this district and throughout the United States.

20.     On information and belief, Defendant NVIDIA (e.g., through its NVIDIA Foundry Partners) designs, develops, and/or manufactures Defendant NVIDIA's semiconductor products and devices that employ an integrated circuit package comprising a stiffener with a bottom surface coupled to a substrate and having a space at least partly surrounding a passive electronic component, including GPUs and graphics cards and processors, such as GeForce GTX 980M GPU, GeForce GTX 980 GPU, GeForce GTX 970M GPU, GeForce GTX 980MX, GeForce GTX 980 Mobile, GeForce GTX 965M, GRID M6-8Q, Quadro M3000M, Quadro M4000, Quadro M4000M, Quadro M5000, Quadro M5000M, and Tesla M6, and similar systems, products, devices, and integrated circuits containing same (e.g., Microsoft Surface Studio computer or similar systems containing N16E-GS-KAB-A1 chipset or similar ICs ("NVIDIA Stiffener Products").

21.     On information and belief, Defendant NVIDIA (directly or through its NVIDIA Foundry Partners) uses this infringing method to fabricate or manufacture the NVIDIA Stiffener Products for importation into the United States for use, sale, and/or offer for sale in this district and throughout the United States.

22.     On information and belief, Defendant NVIDIA (e.g., through its NVIDIA Foundry Partners) designs, develops, and/or manufactures Defendant NVIDIA's semiconductor products and devices that employ an integrated circuit package strip with at least one integrated circuit package in the strip having four lateral sections that surround a stiffener and where at least two of the four lateral sections are shared with different integrated circuit packages along the strip, the stiffener comprising a bottom surface coupled to a substrate and having a space at least partly surrounding at least one passive electronic component, including graphics cards and GPUs

12

(e.g., GeForce GTX 1080Ti), and similar systems, products, devices, and integrated circuits ("NVIDIA Strip Package Products").

23.     On information and belief, Defendant NVIDIA (directly or through its NVIDIA Foundry Partners) uses this infringing method to fabricate or manufacture the NVIDIA Strip Package Products for importation into the United States for use, sale, and/or offer for sale in this district and throughout the United States.

24.     Defendant NVIDIA works with third parties to design and/or develop third party products, such as mobile devices, tablet products, internet of things devices, automotive devices, networking and broadband devices, and home devices that include one or more NVIDIA APC Products, NVIDIA Scheduling Products, NVIDIA Stiffener Products, NVIDIA Strip Package Products, NVIDIA TWINSCAN Products, and/or NVIDIA YieldStar Products ("Third Party Products").  NVIDIA assists third parties, directly or through others, to import the Third Party Products into the United States and offer to sell, and sell, such Third Party Products in the United States.

## JURISDICTION AND VENUE

25.     This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1, *et seq*.

26.     This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

27.     NVIDIA is subject to this Court's general personal jurisdiction at least because NVIDIA is a resident of Texas as defined by Texas law.

28.     NVIDIA is additionally subject to this Court's general and specific personal jurisdiction because NVIDIA has sufficient minimum contacts within the State of Texas and this District, pursuant to due process and/or the Texas Long Arm Statute, Tex. Civ. Prac. & Rem.

Code § 17.042.  On information and belief, NVIDIA contracted with one or more Texas residents in this District and one or both parties performed the contract at least in part in the State of Texas and this District; NVIDIA committed the tort of patent infringement in State of Texas and this District; NVIDIA purposefully availed itself of the privileges of conducting business in the State of Texas and in this District; NVIDIA regularly conducts and solicits business within the State of Texas and within this District; NVIDIA recruits residents of the State of Texas and this District for employment inside or outside the State of Texas; Plaintiff's causes of action arise directly from NVIDIA's business contacts and other activities in the State of Texas and this District; and NVIDIA designs, develops, manufactures, distributes, makes available, imports, sells and offers to sell products and services throughout the United States, including in this judicial District, and introduces infringing products and services that into the stream of commerce knowing that they would be used and sold in this judicial district and elsewhere in the United States.

29.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391 and 1400(b). Defendant NVIDIA is subject to personal jurisdiction in this District and a substantial part of the events giving rise to Vantage Micro's claims against NVIDIA occurred and continue to occur in this District. NVIDIA has a regular and established place of business in this district—including at least its regional office at 11001 Lakeline Blvd., Building 2, Suite 100, Austin, TX 78717— and its acts of infringement have taken place and are continuing to take place in this District.

30.     On information and belief, NVIDIA employs engineers in this District to design and develop products, devices, systems, and/or components of systems that are accused of infringing or more claims of the Asserted Patents. On information and belief, NVIDIA conducts

software and hardware development, marketing, and promotion activities with respect to NVIDIA products that infringe one or more claims of the Asserted Patents.

31.    Further, NVIDIA has regularly made new product announcements in the state of Texas and this District. For example, on May 6, 2016, NVIDIA selected a forum in this judicial district to announce and offer for sale certain NVIDIA graphics cards, which upon information and belief infringe at least one claim of at least one of the Asserted Patents. Specifically, NVIDIA's co-founder and CEO Jensen Huang promoted NVIDIA products, including the NVIDIA GeForce GTX 1080 graphics card, at the Austin Convention Center located at 500 East Cesar Chavez Street, Austin, TX, 78701, in this judicial district. Mr. Huang demonstrated and touted the capabilities of the GeForce GTX 1080 product. NVIDIA also demonstrated for the first time another infringing product (GeForce GTX 1070).

32.    Additionally, NVIDIA—directly or through intermediaries (including distributors, retailers, and others), subsidiaries, alter egos, and/or agents—ships, distributes, offers for sale, and/or sells its products in the United States and this District. NVIDIA has purposefully and voluntarily placed one or more of its infringing products into the stream of commerce with the awareness and/or intent that they will be purchased by consumers in this District. On information and belief, NVIDIA knowingly and purposefully ships infringing products into, and within, this District through an established distribution channel. These infringing products have been, and continue to be, purchased by consumers and businesses in this District.

## **THE PATENTS-IN-SUIT**

33.    On November 8, 2001, U.S. Patent Application No. 10/010,463 was filed at the USPTO ("the '463 Application").  The '463 Application was duly examined and issued as U.S. Patent No. 6,660,651 ("the '651 patent"), entitled "Adjustable Wafer Stage, and a Method and

System for Performing Process Operations Using Same" on December 9, 2003. A true and correct copy of the '651 patent is attached hereto as Exhibit A.

34.    Ocean Semiconductor is the owner of the '651 patent and has the full and exclusive right to bring actions and recover past, present, and future damages for Defendant NVIDIA's infringement of the '651 patent.

35.    The inventions of the '651 patent resolve technical problems related to cross-wafer variations or non-uniformity characteristics in semiconductor wafers that are caused by different deposition and etch processes performed during semiconductor manufacturing. For example, the '651 patent provides a process tool that includes an adjustable wafer stage that allows positioning or re-positioning of the wafer stage, such as raising, lowering, and varying a tilt of the surface of the wafer stage, in order to effectuate the deposition rates of semiconductor materials formed on a wafer.

36.    The claims of the '651 patent do not merely recite the performance of some business practice known from the pre-Internet world along with the requirement to perform it on the Internet. Instead, the claims of the '651 patent recite one or more inventive concepts that are rooted in computerized semiconductor manufacturing or fabrication technologies, and overcome problems specifically arising in the realm of computerized semiconductor manufacturing or fabrication technologies.

37.    The '651 patent is directed to an invention that is not merely the routine or conventional use of the Internet or a generic computer. Instead, it is directed to a process tool with an adjustable wafer stage that offers customizable positioning features to facilitate raising, lowering, or tilting of the wafer stage. This design allows surface adjustment of a wafer surface on which semiconductor materials are deposited to ensure a surface profile that is uniform across

16

the surface of each wafer. The '651 patent claims thus specify how a semiconductor manufacturing system is manipulated to yield a desired result.

38.     Accordingly, each claim of the '651 patent recites a combination of elements sufficient to ensure that the claim in practice amounts to significantly more than a patent on an ineligible concept.

39.     On April 30, 2002, U.S. Patent Application No. 10/135,145 was filed at the USPTO (the "'145 Application"). The '145 Application was duly examined and issued as U.S. Patent No. 6,907,305 ("the '305 Patent"), entitled "Agent Reactive Scheduling in an Automated Manufacturing Environment" on June 14, 2005. A true and correct copy of the '305 patent is attached hereto as Exhibit B.

40.     Ocean Semiconductor is the owner of the '305 patent and has the full and exclusive right to bring actions and recover past, present, and future damages for NVIDIA's infringement of the '305 patent.

41.     The inventions of the '305 patent resolve technical problems related to utilization of process tools and scheduling and execution control of factory control systems. For example, the '305 patent describes agents that reactively schedule, initiate, and execute activities, such as lot transport and processing, in response to certain events occurring during the semiconductor manufacturing process.

42.     The claims of the '305 patent do not merely recite the performance of some business practice known from the pre-Internet world along with the requirement to perform it on the Internet. Instead, the claims of the '305 patent recite one or more inventive concepts that are rooted in computerized semiconductor manufacturing or fabrication technologies, and overcome

problems specifically arising in the realm of computerized semiconductor manufacturing or fabrication technologies.

43.     The '305 patent is directed to an invention that is not merely the routine or conventional use of the Internet or a generic computer.  Instead, it is directed to a manufacturing system that facilitates the reactive scheduling of events resulting from certain factory state changes occurred within the process flow, such as a downtime occurrence, a machine becoming available, a processing chamber being down, a lot departing a machine, a preventative maintenance and equipment qualification being detected, and a wafer being completed.  This system, in turn, allows efficient management of factory control systems and optimizes wafer throughput.  The '305 patent claims thus specify how a semiconductor manufacturing system is manipulated to yield a desired result.

44.     Accordingly, each claim of the '305 patent recites a combination of elements sufficient to ensure that the claim in practice amounts to significantly more than a patent on an ineligible concept.

45.     On July 31, 2000, U.S. Patent Application No. 09/629,073 was filed at the USPTO ("the '073 Application").  The '073 Application was duly examined and issued as U.S. Patent No. 6,725,402 ("the '402 Patent"), entitled "Method and Apparatus for Fault Detection of a Processing Tool and Control Thereof Using an Advanced Process Control (APC) Framework") on April 20, 2004.  A true and correct copy of the '402 patent is attached hereto as Exhibit C.

46.     Ocean Semiconductor is the owner of the '402 patent and has the full and exclusive right to bring actions and recover past, present, and future damages for NVIDIA's infringement of the '402 patent.

47.     The inventions of the '402 patent resolve technical problems related to the delay in reporting manufacturing faults during semiconductor manufacturing, which led to faulty semiconductor devices being produced.  For example, the '402 patent describes systems and methods for shutting down a process tool or halting a manufacturing process in the presence of a manufacturing fault.

48.     The claims of the '402 patent do not merely recite the performance of some business practice known from the pre-Internet world along with the requirement to perform it on the Internet.  Instead, the claims of the '402 patent recite one or more inventive concepts that are rooted in computerized semiconductor manufacturing or fabrication technologies, and overcome problems specifically arising in the realm of computerized semiconductor manufacturing or fabrication technologies.

49.     The '402 patent is directed to an invention that is not merely the routine or conventional use of the Internet or a generic computer.  Instead, it is directed to a fault detection system in a semiconductor manufacturing process to detect the presence of a manufacturing fault and perform corrective measures in an expedient manner.  The '402 patent claims thus specify how a semiconductor manufacturing system is manipulated to yield a desired result.

50.     Accordingly, each claim of the '402 patent recites a combination of elements sufficient to ensure that the claim in practice amounts to significantly more than a patent on an ineligible concept.

51.     On June 13, 2005, U.S. Patent Application No. 11/151,098 was filed at the USPTO ("the '098 Application"). The '098 Application was duly examined and issued as U.S. Patent No. 6,968,248 ("the '248 Patent"), entitled "Agent Reactive Scheduling in an Automated

Manufacturing Environment" on November 22, 2005.  A true and correct copy of the '248 patent
is attached hereto as Exhibit D.

52.    Ocean Semiconductor is the owner of the '248 patent and has the full and
exclusive right to bring actions and recover past, present, and future damages for NVIDIA's
infringement of the '248 patent.

53.    The inventions of the '248 patent resolve technical problems related to utilization
of process tools and scheduling and execution control of factory control systems.  For example,
the '248 patent describes agents that reactively schedule, initiate, and execute activities, such as
lot transport and processing, in response to certain events occurring during the semiconductor
manufacturing process.

54.    The claims of the '248 patent do not merely recite the performance of some
business practice known from the pre-Internet world along with the requirement to perform it on
the Internet.  Instead, the claims of the '248 patent recite one or more inventive concepts that are
rooted in computerized semiconductor manufacturing or fabrication technologies, and overcome
problems specifically arising in the realm of computerized semiconductor manufacturing or
fabrication technologies.

55.    The '248 patent is directed to an invention that is not merely the routine or
conventional use of the Internet or a generic computer.  Instead, it is directed to a manufacturing
system that facilitates the reactive scheduling of events resulting from certain factory state
changes occurred within the process flow, such as a downtime occurrence, a machine becoming
available, a processing chamber being down, a lot departing a machine, a preventative
maintenance and equipment qualification being detected, and a wafer being completed.  This
system, in turn, allows efficient management of factory control systems and optimizes wafer

throughput.  The '248 patent claims thus specify how a semiconductor manufacturing system is manipulated to yield a desired result.

56.     Accordingly, each claim of the '248 patent recites a combination of elements sufficient to ensure that the claim in practice amounts to significantly more than a patent on an ineligible concept.

57.     On March 5, 2003, U.S. Patent Application No. 10/379,738, was filed at the USPTO ("the '738 Application").  The '738 Application was duly examined and issued as U.S. Patent No. 7,080,330 ("the '330 patent"), entitled "Concurrent Measurement of Critical Dimension and Overlay in Semiconductor Manufacturing," on Jul. 18, 2006.  A true and correct copy of the '330 patent is attached hereto as Exhibit E.

58.     Ocean Semiconductor is the owner of the '330 patent and has the full and exclusive right to bring actions and recover past, present, and future damages for NVIDIA's infringement of the '330 patent.

59.     The inventions of the '330 patent resolve technical problems related to forming integrated circuits without overlay errors.  For example, the '330 patent describes a method that monitors and controls a semiconductor fabrication process that mitigate overlay errors and achieve desired critical dimensions.

60.     The claims of the '330 patent do not merely recite the performance of some business practice known from the pre-Internet world along with the requirement to perform it on the Internet.  Instead, the claims of the '330 patent recite one or more inventive concepts that are rooted in computerized semiconductor manufacturing or fabrication technologies, and overcome problems specifically arising in the realm of computerized semiconductor manufacturing or fabrication technologies.

61.     The '330 patent is directed to an invention that is not merely the routine or conventional use of the Internet or a generic computer.  Instead, it is directed to, for example, partitioning a wafer into grid blocks to facilitate concurrent measurements of critical dimensions and overlay as the wafer matriculates through the semiconductor fabrication processes in order to mitigate overlay errors and bring critical dimension within acceptable tolerances.  The '330 patent claims thus specify how a semiconductor manufacturing process is manipulated to yield a desired result.

62.     Accordingly, each claim of the '330 patent recites a combination of elements sufficient to ensure that the claim in practice amounts to significantly more than a patent on an ineligible concept.

63.     On May 1, 2003, U.S. Patent Application No. 10/427,620, was filed at the USPTO ("the '620 Application").  The '620 Application was duly examined and issued as U.S. Patent No. 6,836,691 ("the '691 patent"), entitled "Method and Apparatus for Filtering Metrology Data Based on Collection Purpose," on Dec. 28, 2004.  A true and correct copy of the '691 patent is attached hereto as Exhibit F.

64.     Ocean Semiconductor is the owner of the '691 patent and has the full and exclusive right to bring actions and recover past, present, and future damages for NVIDIA's infringement of the '691 patent.

65.     The inventions of the '691 patent resolve technical problems related to a process controller collecting metrology data that does not accurately reflect the state of the fabrication process or the device(s) being manufactured.  For example, the '691 patent describes a method of generating context data for the metrology data and filtering the metrology data to improve the

22

performance of the process controller by removing outlier data that exhibits variation from a source other than normal process variation.

66.     The claims of the '691 patent do not merely recite the performance of some business practice known from the pre-Internet world along with the requirement to perform it on the Internet.  Instead, the claims of the '691 patent recite one or more inventive concepts that are rooted in computerized semiconductor manufacturing or fabrication technologies, and overcome problems specifically arising in the realm of computerized semiconductor manufacturing or fabrication technologies.

67.     The '691 patent is directed to an invention that is not merely the routine or conventional use of the Internet or a generic computer.  Instead, it is directed to, for example, a process controller that gathers and filters metrology data to remove data originated from non-process sources of variation in order to, for example, accurately identify a fault detection.  The '691 patent claims thus specify how a semiconductor manufacturing process is manipulated to yield a desired result.

68.     Accordingly, each claim of the '691 patent recites a combination of elements sufficient to ensure that the claim in practice amounts to significantly more than a patent on an ineligible concept.

69.     On Nov 2, 2004, U.S. Patent Application No. 10/979,309, was filed at the USPTO ("the '309 Application").  The '309 Application was duly examined and issued as U.S. Patent No. 8,676,538 ("the '538 patent"), entitled "Adjusting Weighting of a parameter Relating to Fault Detection Based on a Detected Fault," on Mar. 18, 2014.  A true and correct copy of the '538 patent is attached hereto as Exhibit G.

70.     Ocean Semiconductor is the owner of the '538 patent and has the full and exclusive right to bring actions and recover past, present, and future damages for NVIDIA's infringement of the '538 patent.

71.     The inventions of the '538 patent resolve technical problems related to inaccurately detecting faults in semiconductor manufacturing processes.  For example, the '691 patent describes a method for employing a dynamic weighting technique in fault detection analysis, including determining a relationship of a parameter relating to the fault detection analysis to a detected fault and adjusting a weighting associating with the parameter based upon the relationship of the parameter to the detected fault.

72.     The claims of the '538 patent do not merely recite the performance of some business practice known from the pre-Internet world along with the requirement to perform it on the Internet.  Instead, the claims of the '538 patent recite one or more inventive concepts that are rooted in computerized semiconductor manufacturing or fabrication technologies, and overcome problems specifically arising in the realm of computerized semiconductor manufacturing or fabrication technologies.

73.     The '538 patent is directed to an invention that is not merely the routine or conventional use of the Internet or a generic computer.  Instead, it is directed to, for example, performing fault detection analyses using dynamic weighting processes to accurately assess faults associated with processing semiconductor wafers.  The '538 patent claims thus specify how a semiconductor manufacturing process is manipulated to yield a desired result.

74.     Accordingly, each claim of the '538 patent recites a combination of elements sufficient to ensure that the claim in practice amounts to significantly more than a patent on an ineligible concept.

24

75.     On Apr. 28, 2008, U.S. Patent Application No. 12/110,798, was filed at the USPTO ("the '798 Application").  The '798 Application was duly examined and issued as U.S. Patent No. 8,120,170 ("the '170 patent"), entitled "Integrated Package Circuit with Stiffener," on Feb. 21, 2012.  A true and correct copy of the '170 patent is attached hereto as Exhibit H.

76.     Ocean Semiconductor is the owner of the '170 patent and has the full and exclusive right to bring actions and recover past, present, and future damages for NVIDIA's infringement of the '170 patent.

77.     The inventions of the '170 patent resolve technical problems related to providing a thinner circuit board that offers mechanical resistance suited for large scale industrialization in a cost-effective manner.  For example, the '170 patent describes an integrated circuit package, comprising: a substrate; a packaged integrated chip coupled to the substrate; at least one passive electronic component coupled to the substrate; and a stiffener comprising a top surface and a bottom surface, the bottom surface coupled to the substrate and having a space at least partly surrounding the at least one passive electronic component.

78.     On Feb. 1, 2012, U.S. Patent Application No. 13/363,620, was filed at the USPTO ("the '620 Application").  The '620 Application was duly examined and issued as U.S. Patent No. 8,847,383 ("the '383 patent"), entitled "Integrated Circuit Package Strip with Stiffener," on Sept. 30, 2014.  A true and correct copy of the '383 patent is attached hereto as Exhibit I.

79.     Ocean Semiconductor is the owner of the '383 patent and has the full and exclusive right to bring actions and recover past, present, and future damages for NVIDIA's infringement of the '383 patent.

80.     The inventions of the '383 patent resolve technical problems related to providing a thinner circuit board that offers mechanical resistance suited for large scale industrialization in

a cost-effective manner.  For example, the '383 patent describes an integrated circuit package strip, comprising: a plurality of integrated circuit packages, wherein at least one integrated circuit package in the strip has four lateral sections that surround a stiffener and where the integrated circuit package shares at least two of the four lateral sections with different integrated circuit packages along the strip, wherein the stiffener comprising a top surface and a bottom surface, the bottom surface coupled to the substrate and having a space at least partly surrounding at least one passive electronic component coupled to a substrate.

## COUNT I: INFRINGEMENT OF THE '651 PATENT

81.     Ocean Semiconductor repeats and re-alleges the allegations of the above paragraphs as if fully set forth herein.

82.     At least as of October 15, 2020, Ocean Semiconductor placed NVIDIA on actual notice of the '651 patent and actual notice that its actions constituted and continued to constitute infringement of the '651 patent.  NVIDIA has had actual knowledge of the '651 patent and its own infringement of the '651 patent since at least that time.

83.     On information and belief, NVIDIA has directly infringed and continues to infringe at least claim 19 of the '651 patent literally or under the doctrine of equivalents, by importing into the United States, and/or using, and/or selling, and/or offering for sale in the United States, without authority or license, integrated circuits that are designed, developed, fabricated, and/or manufactured using the ASML TWINSCAN system and/or similar systems (e.g., with similar technical and functional features), and systems, products, and/or devices containing these integrated circuits including at least the NVIDIA TWINSCAN Products ("'651 Accused Products") in violation of 35 U.S.C. § 271.  The '651 Accused Products are manufactured by a process including all of the limitations of at least claim 19 of the '651 patent.

Each such product includes an integrated circuit fabricated or manufactured using, for example, the ASML TWINSCAN system.

84.     Discovery is expected to uncover the full extent of NVIDIA's infringement of the '651 patent beyond the '651 Accused Products already identified herein.

85.     Specifically, on information and belief, NVIDIA has directly infringed and continues to infringe at least claim 19 of the '651 patent literally or under the doctrine of equivalents, by importing into the United States, and/or using, and/or selling, and/or offering for sale in the United States, without authority or license, the '651 Accused Products, in violation of 35 U.S.C. § 271(g).  On information and belief, NVIDIA imports the '651 Accused Products into the United States for sales and distribution to customers located in the United States.  On information and belief, NVIDIA sells and/or offers for sale the '651 Accused Products in the United States.  For example, NVIDIA provides direct sales through its own sales channels and/or its distributors or contract manufacturers and sells the '651 Accused Products to businesses including original equipment manufacturers and electronic manufacturing service providers.  On information and belief, these direct sales include sales of the '651 Accused Products in the United States.  On information and belief, NVIDIA offers the '651 Accused Products for sale in the United States.  For example, NVIDIA engages in sales, marketing, and contracting activity in the United States and/or with United States offices of its customers.

86.     The '651 Accused Products are manufactured by a process including all of the limitations of at least claim 19 of the '651 patent.  For example, during the manufacture of the '651 Accused Products, a process chamber is provided that includes a wafer stage having a surface that is adjustable.  The surface of the wafer stage is adjusted by performing at least one of raising, lowering, and varying a tilt of the surface of the wafer stage.  A wafer from which the

'651 Accused Products are fabricated or manufactured is positioned after adjusting the wafer stage such that a process operation is performed on the wafer positioned on the wafer stage.  On information and belief, NVIDIA, directly or through one of its Foundry Partners, contracted with ASML to use this process to design, develop, or manufacture the '651 Accused Products.  On information and belief, NVIDIA, directly or through one of its Foundry Partners, contracted with ASML to use this process to design, develop, or manufacture the '651 Accused Products.

87.      Attached hereto as Exhibit J, and incorporated by reference herein, is a claim chart detailing how each of the '651 Accused Products is manufactured using the ASML TWINSCAN system by a NVIDIA Foundry Partner on behalf of NVIDIA (e.g., TSMC and/or UMC) that satisfies each element of at least claim 19 of the '651 patent, literally or under the doctrine of equivalents.

88.      On information and belief, the '651 Accused Products are neither materially changed by subsequent processes nor become trivial and nonessential components of another product.

89.      On information and belief, at least as of October 15, 2020, NVIDIA has induced and continues to induce others actively, knowingly, and intentionally, including its suppliers and contract manufacturers, to infringe one or more claims of the '651 patent, including, but not limited to, claim 19, pursuant to 35 U.S.C. § 271(b), by actively encouraging others to import into the United States, and/or make, use, sell, and/or offer to sell in the United States, the '651 Accused Products or products containing the infringing semiconductor components of the '651 Accused Products, by actively inducing others to infringe the '651 patent by making, using, selling, offering for sale, marketing, advertising, and/or importing the Accused Products to their

customers for use in downstream products that infringe, or were manufactured using processes that infringe, the '651 patent, and by instructing others to infringe the '651 patent.

90.     For example, NVIDIA actively promotes the sale, use, and importation of the '651 Accused Products in marketing materials, technical specifications, data sheets, web pages on its website (e.g., www.nvidia.com), press releases, training tutorials, development and design tools, user manuals, and developer forums as well as at trade shows (e.g., the Consumer Technology Association's Consumer Electronics Show ("CES")) and NVIDIA's online Discussion Forums for GeForce products and developers) and through its sales and distribution channels that encourage infringing uses, sales, offers to sell, and importation of the '651 Accused Products.  As another example, NVIDIA's representatives travel to customer sites in the United States for sales and support activity that includes working with customers to facilitate these customers' infringing testing, marketing, importation, and sales activity.  On information and belief, NVIDIA supplies customers with '651 Accused Products so that they may be used, sold, or offered for sale by those customers.  For example, NVIDIA provides direct sales to original equipment manufacturers and electronic manufacturing service providers.  On information and belief, these direct sales include sales to customers in the United States.  NVIDIA also promotes, publicly on its website, uses of the '651 Accused Products by customers in the United States. NVIDIA additionally provides a wide range of technical support to customers and businesses, including product-specific solutions.  NVIDIA also encourages customers and other third parties to communicate directly with NVIDIA representatives about these products for purposes of technical assistance and repair (e.g., https://www.nvidia.com/en-us/support/enterprise/ and https://www.nvidia.com/en-us/support/consumer/).

91.     On information and belief, NVIDIA sells or offers for sale the '651 Accused Products to third parties that incorporate the '651 Accused Products into third party products ("the '651 Third Party Products").

92.     On information and belief, NVIDIA assists third parties, directly and/or through intermediaries, in the development of the '651 Third Party Products and provides technical support and supports the sales of the '651 Third Party Products.

93.     On information and belief, since at least as of October 15, 2020, NVIDIA has induced and continues to induce third parties with specific intent or willful blindness to import, make, use, sell, and/or offer to sell '651 Third Party Products that include at least one '651 Accused Product fabricated or manufactured using the ASML TWINSCAN system, or similar systems (e.g., with similar technical and functional features), whose make, use, sale, offer for sale, or importation constitutes direct infringement of at least one claim of the '651 patent.

94.     On information and belief, the '651 Third Party Products are imported into the United States for use, sale, and/or offer for sale in this District and throughout the United States ("Imported '651 Third Party Products").

95.     On information and belief, to the extent any entity other than NVIDIA, including but not limited to any of NVIDIA's Foundry Partners or third-party importers, imports the '651 Accused Products and/or Imported '651 Third-Party Products into the United States for or on behalf of NVIDIA ("Third Party Importer"), NVIDIA is liable for inducement of infringement by the Third Party Importer.  NVIDIA has encouraged the Third Party Importer to infringe the '651 patent and intended that it do so.  This encouragement includes at least ordering or instructing the Third Party Importer to import the '651 Accused Products and/or '651 Third-Party Products into the United States, providing directions and other materials to the Third Party

Importer to enable such importation, and/or conditioning the receipt of benefits (included but not

limited to payment) to the Third Party Importer on such importation.  On information and belief,

this behavior has continued since Defendant first became aware of the '651 patent and the

infringement thereof.

96.     On information and belief, to the extent any entity other than NVIDIA, including

but not limited to any of NVIDIA's Foundry Partners, uses the patented method to fabricate or

manufacture the '651 Accused Products and/or Imported '651 Third-Party Products in the United

States for or on behalf of NVIDIA ("Third Party Manufacturer"), NVIDIA is liable

for inducement of infringement by the Third Party Manufacturer.  NVIDIA has encouraged the

Third Party Manufacturer to infringe the '651 patent and intended that it do so.  This

encouragement includes, without limitation, ordering the '651 Accused Products from the Third

Party Manufacturer since Defendant first became aware of the '651 patent and its infringement

by the Third Party Manufacturer.

97.     NVIDIA has benefitted and continues to benefit from the importation into the

United States of the '651 Accused Products, '651 Third Party Products, and Imported '651 Third

Party Products.

98.     Ocean Semiconductor has suffered, and continues to suffer, damages as a result of

NVIDIA's infringement of the '651 patent.

99.     NVIDIA has continued to infringe the '651 patent since at least October 15, 2020,

despite being on notice of the '651 patent and its infringement.  NVIDIA has therefore infringed

the '651 patent knowingly, willfully, deliberately, and in disregard of Plaintiff's patent rights

since at least October 15, 2020, at least by performing acts of infringement with actual

knowledge of its direct and indirect infringement or while remaining willfully blind to the fact of

its direct and indirect infringement.  As a result of at least this conduct, Plaintiff is entitled to enhanced damages under 35 U.S.C. § 284 and to attorneys' fees and costs under 35 U.S.C. § 285.

100.    Ocean Semiconductor reserves the right to modify its infringement theories as discovery progresses in this case.  Ocean Semiconductor shall not be estopped or otherwise limited or restricted for purposes of its infringement contentions or its claim constructions by the claim charts that it provides with this Complaint.  Ocean Semiconductor intends for the claim chart (Exhibit J) for the '651 patent to satisfy the notice requirements of Rule 8(a)(2) of the Federal Rule of Civil Procedure.  The claim chart is not Ocean Semiconductor's preliminary or final infringement contentions or preliminary or final claim construction positions.

## COUNT II: INFRINGEMENT OF THE '402 PATENT

101.    Ocean Semiconductor repeats and re-alleges the allegations of the above paragraphs as if fully set forth herein.

102.    At least as of October 15, 2020, Ocean Semiconductor placed NVIDIA on actual notice of the '402 patent and actual notice that its actions constituted and continued to constitute infringement of the '402 patent.  NVIDIA has had actual knowledge of the '402 patent and its own infringement of the '402 patent since at least that time.

103.    NVIDIA has directly infringed and continues to infringe at least claim 1 of the '402 patent literally or under the doctrine of equivalents, by importing into the United States, and/or using, and/or selling, and/or offering for sale in the United States, without authority or license, integrated circuits designed, developed, fabricated, and/or manufactured using the Applied Materials E3 system, PDF Solutions' Exensio system, and/or similar systems (e.g., with similar technical and functional features), and systems, products, and/or devices containing these integrated circuits including at least the NVIDIA APC Products ("'402 Accused Products") in

32

violation of 35 U.S.C. § 271.  The '402 Accused Products are manufactured by a process including all of the limitations of at least claim 1 of the '402 patent.  Each such product includes an integrated circuit fabricated or manufactured using, for example, the Applied Materials E3 system and/or PDF Solutions' Exensio system.

104.    Discovery is expected to uncover the full extent of NVIDIA's infringement of the '402 patent beyond the '402 Accused Products already identified herein.

105.    Specifically, on information and belief, NVIDIA has directly infringed and continues to infringe at least claim 1 of the '402 patent literally or under the doctrine of equivalents, by importing into the United States, and/or using, and/or selling, and/or offering for sale in the United States, without authority or license, the '402 Accused Products, in violation of 35 U.S.C. § 271(g).  On information and belief, NVIDIA imports the '402 Accused Products into the United States for sales and distribution to customers located in the United States.  On information and belief, NVIDIA sells and/or offers for sale the '402 Accused Products in the United States.  For example, NVIDIA provides direct sales through its own sales channels and/or its distributors or contract manufacturers and sells the '402 Accused Products to businesses including original equipment manufacturers and electronic manufacturing service providers.  On information and belief, these direct sales include sales of the '402 Accused Products in the United States.  On information and belief, NVIDIA offers the '402 Accused Products for sale in the United States.  For example, NVIDIA engages in sales, marketing, and contracting activity in the United States and/or with United States offices of its customers.

106.    The '402 Accused Products are manufactured by a process including all of the limitations of at least claim 1 of the '402 patent.  The '402 Accused Products are made by a claimed method.  Each is an integrated circuit fabricated or manufactured using, for example, the

Applied Materials E3 system and/or PDF Solutions' Exensio system.  For example, during the

manufacture of the '402 Accused Products (e.g., by the Applied Materials E3 system and/or PDF

Solutions' Exensio system and/or similar systems (e.g., with similar technical and functional

features)), operational state data of a processing tool related to the manufacture of a processing

piece (e.g., from which the '402 Accused Products are fabricated or manufactured) is received at

a first interface.  The state data from the first interface is sent to a fault detection unit, including

sending the state data from the first interface to a data collection unit.  The state data is

accumulated at the data collection unit and translated from a first communications protocol to a

second communications protocol compatible with the fault detection unit.  The translated state

data is sent from the data collection unit to the fault detection unit to determine if a fault

condition exists with the processing tool based upon the state data received by the fault detection

unit.  Then, a predetermined action is performed on the processing tool in response to the

presence of a fault condition, and an alarm signal indicative of the fault condition is sent to an

advanced process control framework from the fault detection unit providing that a fault condition

of the processing tool was determined by the fault detection unit.  This manufacturing process

also includes sending a signal by the framework to the first interface reflective of the

predetermined action, and sending the accumulated state data from the data collection unit to the

fault detection unit while a processing piece is being processed by the tool.  On information and

belief, NVIDIA, directly or through one of its Foundry Partners (e.g., TSMC and/or UMC),

contracted with Applied Materials and PDF Solutions to use this process to design, develop, or

manufacture the '402 Accused Products.

     107.    Attached hereto as Exhibits K and L, and incorporated by reference herein, are

claim charts detailing how each of the '402 Accused Products is manufactured using the Applied

Materials E3 system and/or PDF Solutions' Exensio system by a NVIDIA Foundry Partner on behalf of NVIDIA (e.g., UMC and/or TSMC) that satisfies each element of at least claim 1 of the '402 patent, literally or under the doctrine of equivalents.

108.    On information and belief, the '402 Accused Products are neither materially changed by subsequent processes nor become trivial and nonessential components of another product.

109.    On information and belief, since at least as of October 15, 2020, NVIDIA has induced and continues to induce others actively, knowingly, and intentionally, including its suppliers and contract manufacturers, to infringe one or more claims of the '402 patent, including, but not limited to, claim 1, pursuant to 35 U.S.C. § 271(b), by actively encouraging others to import into the United States, and/or make, use, sell, and/or offer to sell in the United States, the '402 Accused Products or products containing the infringing semiconductor components of the '402 Accused Products, by actively inducing others to infringe the '402 patent by making, using, selling, offering for sale, marketing, advertising, and/or importing the Accused Products to their customers for use in downstream products that infringe, or were manufactured using processes that infringe, the '402 patent, and by instructing others to infringe the '402 patent.

110.    For example, NVIDIA actively promotes the sale, use, and importation of the '402 Accused Products in marketing materials, technical specifications, data sheets, web pages on its website (e.g., www.nvidia.com), press releases, training tutorials, development and design tools, user manuals, and developer forums as well as at trade shows (e.g., the Consumer Technology Association's Consumer Electronics Show ("CES")) and NVIDIA's online Discussion Forums for GeForce products and developers) and through its sales and distribution

channels that encourage infringing uses, sales, offers to sell, and importation of the '402 Accused Products.  As another example, NVIDIA's representatives travel to customer sites in the United States for sales and support activity that includes working with customers to facilitate these customers' infringing testing, marketing, importation, and sales activity.  On information and belief, NVIDIA supplies customers with '402 Accused Products so that they may be used, sold, or offered for sale by those customers.  For example, NVIDIA provides direct sales to original equipment manufacturers and electronic manufacturing service providers.  On information and belief, these direct sales include sales to customers in the United States.  NVIDIA also promotes, publicly on its website, uses of the '402 Accused Products by customers in the United States. NVIDIA additionally provides a wide range of technical support to customers and businesses, including product-specific solutions.  NVIDIA also encourages customers and other third parties to communicate directly with NVIDIA representatives about these products for purposes of technical assistance and repair (e.g., https://www.nvidia.com/en-us/support/enterprise/ and https://www.nvidia.com/en-us/support/consumer/).

111.    On information and belief, NVIDIA sells or offers for sale the '402 Accused Products to third parties that incorporate the '402 Accused Products into third party products ("the '402 Third Party Products").

112.    On information and belief, NVIDIA assists third parties, directly and/or through intermediaries, in the development of the '402 Third Party Products and provides technical support and supports the sales of the '402 Third Party Products.

113.    On information and belief, since at least as of October 15, 2020, NVIDIA  has induced and continues to induce third parties with specific intent or willful blindness to import, make, use, sell, and/or offer to sell '402 Third Party Products that include at least one '402

Accused Product fabricated or manufactured using the Applied Materials E3 system, and/or PDF Solutions' Exensio system and/or similar systems (e.g., with similar technical and functional features), whose make, use, sale, offer for sale, or importation constitutes direct infringement of at least one claim of the '402 patent.

114.    On information and belief, the '402 Third Party Products are imported into the United States for use, sale, and/or offer for sale in this District and throughout the United States ("Imported '402 Third Party Products").

115.    On information and belief, to the extent any entity other than NVIDIA, including but not limited to any of NVIDIA's Foundry Partners or third-party importers, imports the '402 Accused Products and/or Imported '402 Third-Party Products into the United States for or on behalf of NVIDIA ("Third Party Importer"), NVIDIA is liable for inducement of infringement by the Third Party Importer.  NVIDIA has encouraged the Third Party Importer to infringe the '402 patent and intended that it do so.  This encouragement includes at least ordering or instructing the Third Party Importer to import the '402 Accused Products and/or '402 Third-Party Products into the United States, providing directions and other materials to the Third Party Importer to enable such importation, and/or conditioning the receipt of benefits (included but not limited to payment) to the Third Party Importer on such importation.  On information and belief, this behavior has continued since Defendant first became aware of the '402 patent and the infringement thereof.

116.    On information and belief, to the extent any entity other than NVIDIA, including but not limited to any of NVIDIA's Foundry Partners, uses the patented method to fabricate or manufacture the '402 Accused Products and/or Imported '402 Third-Party Products in the United States for or on behalf of NVIDIA ("Third Party Manufacturer"), NVIDIA is liable

for inducement of infringement by the Third Party Manufacturer.  NVIDIA has encouraged the Third Party Manufacturer to infringe the '402 patent and intended that it do so.  This encouragement includes, without limitation, ordering the '402 Accused Products from the Third Party Manufacturer since Defendant first became aware of the '402 patent and its infringement by the Third Party Manufacturer.

117.    NVIDIA has benefitted and continues to benefit from the importation into the United States of the '402 Accused Products, '402 Third Party Products, and Imported '402 Third Party Products.

118.    Ocean Semiconductor has suffered, and continues to suffer, damages as a result of NVIDIA's infringement of the '402 patent.

119.    NVIDIA has continued to infringe the '402 patent since at least October 15, 2020, despite being on notice of the '402 patent and its infringement.  NVIDIA has therefore infringed the '402 patent knowingly, willfully, deliberately, and in disregard of Plaintiff's patent rights since at least October 15, 2020, at least by performing acts of infringement with actual knowledge of its direct and indirect infringement or while remaining willfully blind to the fact of its direct and indirect infringement.  As a result of at least this conduct, Plaintiff is entitled to enhanced damages under 35 U.S.C. § 284 and to attorneys' fees and costs under 35 U.S.C. § 285.

120.    Ocean Semiconductor reserves the right to modify its infringement theories as discovery progresses in this case.  Ocean Semiconductor shall not be estopped or otherwise limited or restricted for purposes of its infringement contentions or its claim constructions by the claim charts that it provides with this Complaint.  Ocean Semiconductor intends the claim chart (Exhibits K and L) for the '402 patent to satisfy the notice requirements of Rule 8(a)(2) of the

Federal Rule of Civil Procedure.  The claim chart is not Ocean Semiconductor's preliminary or final infringement contentions or preliminary or final claim construction positions.

## COUNT III: INFRINGEMENT OF THE '305 PATENT

121.    Ocean Semiconductor repeats and re-alleges the allegations of the above paragraphs as if fully set forth herein.

122.    At least as of October 15, 2020, Ocean Semiconductor placed NVIDIA on actual notice of the '305 patent and actual notice that its actions constituted and continued to constitute infringement of the '305 patent.  NVIDIA has had actual knowledge of the '305 patent and its own infringement of the '305 patent since at least that time.

123.    NVIDIA has directly infringed and continues to infringe at least claim 1 of the '305 patent literally or under the doctrine of equivalents, by importing into the United States, and/or using, and/or selling, and/or offering for sale in the United States, without authority or license, integrated circuits designed, developed, fabricated, and/or manufactured using the Applied Materials SmartFactory system, camLine's LineWorks system, and/or other similar proprietary or third-party scheduling and dispatching platform hardware and/or software (e.g., with similar technical and functional features), and systems, products, and/or devices containing these integrated circuits including at least the NVIDIA Scheduling Products ("'305 Accused Products") in violation of 35 U.S.C. § 271.  The '305 Accused Products are manufactured by a process including all of the limitations of at least claim 1 of the '305 patent.  Each such product includes an integrated circuit fabricated or manufactured using, for example, the Applied Materials SmartFactory system and/or camLine's LineWorks system.

124.    Discovery is expected to uncover the full extent of NVIDIA's infringement of the '305 patent beyond the '305 Accused Products already identified herein.

125.     Specifically, on information and belief, NVIDIA has directly infringed and continues to infringe at least claim 1 of the '305 patent literally or under the doctrine of equivalents, by importing into the United States, and/or using, and/or selling, and/or offering for sale in the United States, without authority or license, the '305 Accused Products, in violation of 35 U.S.C. § 271(g).  On information and belief, NVIDIA imports the '305 Accused Products into the United States for sales and distribution to customers located in the United States.  On information and belief, NVIDIA sells and/or offers for sale the '305 Accused Products in the United States.  For example, NVIDIA provides direct sales through its own sales channels and/or its distributors or contract manufacturers and sells the '305 Accused Products to businesses including original equipment manufacturers and electronic manufacturing service providers.  On information and belief, these direct sales include sales of the '305 Accused Products in the United States.  On information and belief, NVIDIA offers the '305 Accused Products for sale in the United States.  For example, NVIDIA engages in sales, marketing, and contracting activity in the United States and/or with United States offices of its customers.

126.     The '305 Accused Products are manufactured by a process including all of the limitations of at least claim 1 of the '305 patent.  For example, during the manufacture of the '305 Accused Products (e.g., by the Applied Material SmartFactory system, Applied Materials SmartFactory system and/or camLine's LineWorks system, and/or similar systems (e.g., with similar technical and functional features)), an occurrence of a predetermined event is detected in a process flow and a software scheduling agent is notified of the occurrence.  An action is reactively scheduled from the software scheduling agent responsive to the detection of the predetermined event.  An appointment is proactively scheduled with which the predetermined event is associated.  On information and belief, NVIDIA, directly or through one of its Foundry

Partners, contracted with Applied Materials and/or camLine to use this process to design, develop, or manufacture the '305 Accused Products.

127.    Attached hereto as Exhibits M and N, and incorporated by reference herein, are claim charts detailing how each of the '305 Accused Products is manufactured using the Applied Materials SmartFactory system and/or camLine's LineWorks system by a NVIDIA Foundry Partner on behalf of NVIDIA (e.g., UMC and/or TSMC) that satisfies each element of at least claim 1 of the '305 patent, literally or under the doctrine of equivalents.

128.    On information and belief, the '305 Accused Products are neither materially changed by subsequent processes nor become trivial and nonessential components of another product.

129.    On information and belief, since at least as of October 15, 2020, NVIDIA has induced and continues to induce others actively, knowingly, and intentionally, including its suppliers and contract manufacturers, to infringe one or more claims of the '305 patent, including, but not limited to, claim 1, pursuant to 35 U.S.C. § 271(b), by actively encouraging others to import into the United States, and/or make, use, sell, and/or offer to sell in the United States, the '305 Accused Products or products containing the infringing semiconductor components of the '305 Accused Products, by actively inducing others to infringe the '305 patent by making, using, selling, offering for sale, marketing, advertising, and/or importing the Accused Products to their customers for use in downstream products that infringe, or were manufactured using processes that infringe, the '305 patent, and by instructing others to infringe the '305 patent.

130.    For example, NVIDIA actively promotes the sale, use, and importation of the '305 Accused Products in marketing materials, technical specifications, data sheets, web pages

on its website (e.g., www.nvidia.com), press releases, training tutorials, development and design tools, user manuals, and developer forums as well as at trade shows (e.g., the Consumer Technology Association's Consumer Electronics Show ("CES")) and NVIDIA's online Discussion Forums for GeForce products and developers) and through its sales and distribution channels that encourage infringing uses, sales, offers to sell, and importation of the '305 Accused Products.  As another example, NVIDIA's representatives travel to customer sites in the United States for sales and support activity that includes working with customers to facilitate these customers' infringing testing, marketing, importation, and sales activity.  On information and belief, NVIDIA supplies customers with '305 Accused Products so that they may be used, sold, or offered for sale by those customers.  For example, NVIDIA provides direct sales to original equipment manufacturers and electronic manufacturing service providers.  On information and belief, these direct sales include sales to customers in the United States.  NVIDIA also promotes, publicly on its website, uses of the '305 Accused Products by customers in the United States. NVIDIA additionally provides a wide range of technical support to customers and businesses, including product-specific solutions.  NVIDIA also encourages customers and other third parties to communicate directly with NVIDIA representatives about these products for purposes of technical assistance and repair (e.g., https://www.nvidia.com/en-us/support/enterprise/ and https://www.nvidia.com/en-us/support/consumer/).

131.    On information and belief, NVIDIA sells or offers for sale the '305 Accused Products to third parties that incorporate the '305 Accused Products into third party products ("the '305 Third Party Products").

132.    On information and belief, NVIDIA assists third parties, directly and/or through intermediaries, in the development of the '305 Third Party Products and provides technical support and supports the sales of the '305 Third Party Products.

133.    On information and belief, since at least as of October 15, 2020, NVIDIA has induced and continues to induce third parties with specific intent or willful blindness to import, make, use, sell, and/or offer to sell '305 Third Party Products that include at least one '305 Accused Product fabricated or manufactured using the Applied Materials SmartFactory system and/or camLine's LineWorks system, or similar systems (e.g., with similar technical and functional features), whose make, use, sale, offer for sale, or importation constitutes direct infringement of at least one claim of the '305 patent.

134.    On information and belief, the '305 Third Party Products are imported into the United States for use, sale, and/or offer for sale in this District and throughout the United States ("Imported '305 Third Party Products").

135.    On information and belief, to the extent any entity other than NVIDIA, including but not limited to any of NVIDIA's Foundry Partners or third-party importers, imports the '305 Accused Products and/or Imported '305 Third-Party Products into the United States for or on behalf of NVIDIA ("Third Party Importer"), NVIDIA is liable for inducement of infringement by the Third Party Importer.  NVIDIA has encouraged the Third Party Importer to infringe the '305 patent and intended that it do so.  This encouragement includes at least ordering or instructing the Third Party Importer to import the '305 Accused Products and/or '305 Third-Party Products into the United States, providing directions and other materials to the Third Party Importer to enable such importation, and/or conditioning the receipt of benefits (included but not limited to payment) to the Third Party Importer on such importation.  On information and belief,

43

this behavior has continued since Defendant first became aware of the '305 patent and the infringement thereof.

136.    On information and belief, to the extent any entity other than NVIDIA, including but not limited to any of NVIDIA's Foundry Partners, uses the patented method to fabricate or manufacture the '305 Accused Products and/or Imported '305 Third-Party Products in the United States for or on behalf of NVIDIA ("Third Party Manufacturer"), NVIDIA is liable for inducement of infringement by the Third Party Manufacturer.  NVIDIA has encouraged the Third Party Manufacturer to infringe the '305 patent and intended that it do so.  This encouragement includes, without limitation, ordering the '305 Accused Products from the Third Party Manufacturer since Defendant first became aware of the '305 patent and its infringement by the Third Party Manufacturer.

137.    NVIDIA has benefitted and continues to benefit from the importation into the United States of the '305 Accused Products, '305 Third Party Products, and Imported '305 Third Party Products.

138.    Ocean Semiconductor has suffered, and continues to suffer, damages as a result of NVIDIA's infringement of the '305 patent.

139.    NVIDIA has continued to infringe the '305 patent since at least October 15, 2020, despite being on notice of the '305 patent and its infringement.  NVIDIA has therefore infringed the '305 patent knowingly, willfully, deliberately, and in disregard of Plaintiff's patent rights since at least October 15, 2020, at least by performing acts of infringement with actual knowledge of its direct and indirect infringement or while remaining willfully blind to the fact of its direct and indirect infringement.  As a result of at least this conduct, Plaintiff is entitled to enhanced damages under 35 U.S.C. § 284 and to attorneys' fees and costs under 35 U.S.C. § 285.

140.     Ocean Semiconductor reserves the right to modify its infringement theories as discovery progresses in this case.  Ocean Semiconductor shall not be estopped or otherwise limited or restricted for purposes of its infringement contentions or its claim constructions by the claim charts that it provides with this Complaint.  Ocean Semiconductor intends the claim chart (Exhibits M and N) for the '305 patent to satisfy the notice requirements of Rule 8(a)(2) of the Federal Rule of Civil Procedure.  The claim chart is not Ocean Semiconductor's preliminary or final infringement contentions or preliminary or final claim construction positions.

## COUNT IV: INFRINGEMENT OF THE '248 PATENT

141.     Ocean Semiconductor repeats and re-alleges the allegations of the above paragraphs as if fully set forth herein.

142.     At least as of October 15, 2020, Ocean Semiconductor placed NVIDIA on actual notice of the '248 patent and actual notice that its actions constituted and continued to constitute infringement of the '248 patent.  NVIDIA has had actual knowledge of the '248 patent and its own infringement of the '248 patent since at least that time.

143.     NVIDIA has directly infringed and continues to infringe at least claim 1 of the '248 patent literally or under the doctrine of equivalents, by importing into the United States, and/or using, and/or selling, and/or offering for sale in the United States, without authority or license, integrated circuits designed, developed, fabricated, and/or manufactured using the Applied Materials SmartFactory system and/or other similar proprietary or third-party scheduling and dispatching platform hardware and/or software (e.g., with similar technical and functional features), and systems, products, and/or devices containing these integrated circuits including at least the NVIDIA Scheduling Products ("'248 Accused Products") in violation of 35 U.S.C. § 271.  The '248 Accused Products are manufactured by a process including all of the limitations

45

of at least claim 1 of the '248 patent. Each such product includes an integrated circuit fabricated or manufactured using, for example, the Applied Materials SmartFactory system and/or camLine's LineWorks system.

144. Discovery is expected to uncover the full extent of NVIDIA's infringement of the '248 patent beyond the '248 Accused Products already identified herein.

145. Specifically, on information and belief, NVIDIA has directly infringed and continues to infringe at least claim 1 of the '248 patent literally or under the doctrine of equivalents, by importing into the United States, and/or using, and/or selling, and/or offering for sale in the United States, without authority or license, the '248 Accused Products, in violation of 35 U.S.C. § 271(g). On information and belief, NVIDIA imports the '248 Accused Products into the United States for sales and distribution to customers located in the United States. On information and belief, NVIDIA sells and/or offers for sale the '248 Accused Products in the United States. For example, NVIDIA provides direct sales through its own sales channels and/or its distributors or contract manufacturers and sells the '248 Accused Products to businesses including original equipment manufacturers and electronic manufacturing service providers. On information and belief, these direct sales include sales of the '248 Accused Products in the United States. On information and belief, NVIDIA offers the '248 Accused Products for sale in the United States. For example, NVIDIA engages in sales, marketing, and contracting activity in the United States and/or with United States offices of its customers.

146. The '248 Accused Products are manufactured by a process including all of the limitations of at least claim 1 of the '248 patent. For example, during the manufacture of the '248 Accused Products (e.g., by the Applied Materials SmartFactory system and/or camLine's LineWorks system and/or similar systems (e.g., with similar technical and functional features)),

an occurrence of a predetermined event is automatically detected in an integrated, automated

process flow.  A software scheduling agent is automatically notified of the occurrence; and an

action is reactively scheduled from the software scheduling agent responsive to the detection of

the predetermined event.  An appointment is proactively scheduled with which the

predetermined event is associated, including proactively scheduling the appointment from the

software scheduling agent.  On information and belief, NVIDIA, directly or through one of its

Foundry Partners, contracted with Applied Materials and/or camLine to use this process to

design, develop, or manufacture the '248 Accused Products.

147.    Attached hereto as Exhibits O and P, and incorporated by reference herein, are

claim charts detailing how each of the '248 Accused Products is manufactured using the Applied

Materials SmartFactory system and/or camLine's LineWorks system by a NVIDIA Foundry

Partner on behalf of NVIDIA (e.g., UMC and/or TSMC) that satisfies each element of at least

claim 1 of the '248 patent, literally or under the doctrine of equivalents.

148.    On information and belief, the '248 Accused Products are neither materially

changed by subsequent processes nor become trivial and nonessential components of another

product.

149.    On information and belief, since at least as of October 15, 2020, NVIDIA has

induced and continues to induce others actively, knowingly, and intentionally, including its

suppliers and contract manufacturers, to infringe one or more claims of the '248 patent,

including, but not limited to, claim 1, pursuant to 35 U.S.C. § 271(b), by actively encouraging

others to import into the United States, and/or make, use, sell, and/or offer to sell in the United

States, the '248 Accused Products or products containing the infringing semiconductor

components of the '248 Accused Products, by actively inducing others to infringe the '248 patent

47

by making, using, selling, offering for sale, marketing, advertising, and/or importing the Accused

Products to their customers for use in downstream products that infringe, or were manufactured

using processes that infringe, the '248 patent, and by instructing others to infringe the '248

patent.

150.    For example, NVIDIA actively promotes the sale, use, and importation of the

'248 Accused Products in marketing materials, technical specifications, data sheets, web pages

on its website (e.g., www.nvidia.com), press releases, training tutorials, development and design

tools, user manuals, and developer forums as well as at trade shows (e.g., the Consumer

Technology Association's Consumer Electronics Show ("CES")) and NVIDIA's online

Discussion Forums for GeForce products and developers) and through its sales and distribution

channels that encourage infringing uses, sales, offers to sell, and importation of the '248 Accused

Products.  As another example, NVIDIA's representatives travel to customer sites in the United

States for sales and support activity that includes working with customers to facilitate these

customers' infringing testing, marketing, importation, and sales activity.  On information and

belief, NVIDIA supplies customers with '248 Accused Products so that they may be used, sold,

or offered for sale by those customers.  For example, NVIDIA provides direct sales to original

equipment manufacturers and electronic manufacturing service providers.  On information and

belief, these direct sales include sales to customers in the United States.  NVIDIA also promotes,

publicly on its website, uses of the '248 Accused Products by customers in the United States.

NVIDIA additionally provides a wide range of technical support to customers and businesses,

including product-specific solutions.  NVIDIA also encourages customers and other third parties

to communicate directly with NVIDIA representatives about these products for purposes of

technical assistance and repair (e.g., https://www.nvidia.com/en-us/support/enterprise/ and
https://www.nvidia.com/en-us/support/consumer/).

151.    On information and belief, NVIDIA sells or offers for sale the '248 Accused
Products to third parties that incorporate the '248 Accused Products into third party products
("the '248 Third Party Products").

152.    On information and belief, NVIDIA assists third parties, directly and/or through
intermediaries, in the development and manufacture of the '248 Third Party Products and
provides technical support and supports the sales of the '248 Third Party Products.

153.    On information and belief, since at least as of October 15, 2020, NVIDIA  has
induced and continues to induce third parties with specific intent or willful blindness to import,
make, use, sell, and/or offer to sell '248 Third Party Products that include at least one '248
Accused Product fabricated or manufactured using the Applied Materials SmartFactory system
and/or camLine's LineWorks system and/or similar systems (e.g., with similar technical and
functional features), whose make, use, sale, offer for sale, or importation constitutes direct
infringement of at least one claim of the '248 patent.

154.     On information and belief, the '248 Third Party Products are imported into the
United States for use, sale, and/or offer for sale in this District and throughout the United States
("Imported '248 Third Party Products").

155.    On information and belief, to the extent any entity other than NVIDIA, including
but not limited to any of NVIDIA's Foundry Partners or third-party importers, imports the '248
Accused Products and/or Imported '248 Third-Party Products into the United States for or on
behalf of NVIDIA ("Third Party Importer"), NVIDIA is liable for inducement of infringement
by the Third Party Importer.  NVIDIA has encouraged the Third Party Importer to infringe

the '248 patent and intended that it do so.  This encouragement includes at least ordering or instructing the Third Party Importer to import the '248 Accused Products and/or '248 Third-Party Products into the United States, providing directions and other materials to the Third Party Importer to enable such importation, and/or conditioning the receipt of benefits (included but not limited to payment) to the Third Party Importer on such importation.  On information and belief, this behavior has continued since Defendant first became aware of the '248 patent and the infringement thereof.

156.     On information and belief, to the extent any entity other than NVIDIA, including but not limited to any of NVIDIA's Foundry Partners, uses the patented method to fabricate or manufacture the '248 Accused Products and/or Imported '248 Third-Party Products in the United States for or on behalf of NVIDIA ("Third Party Manufacturer"), NVIDIA is liable for inducement of infringement by the Third Party Manufacturer.  NVIDIA has encouraged the Third Party Manufacturer to infringe the '248 patent and intended that it do so.  This encouragement includes, without limitation, ordering the '248 Accused Products from the Third Party Manufacturer since Defendant first became aware of the '248 patent and its infringement by the Third Party Manufacturer.

157.     NVIDIA has benefitted and continues to benefit from the importation into the United States of the '248 Accused Products, '248 Third Party Products, and Imported '248 Third Party Products.

158.     Ocean Semiconductor has suffered, and continues to suffer, damages as a result of NVIDIA's infringement of the '248 patent.

159.     NVIDIA has continued to infringe the '248 patent since at least October 15, 2020, despite being on notice of the '248 patent and its infringement.  NVIDIA has therefore infringed

the '248 patent knowingly, willfully, deliberately, and in disregard of Plaintiff's patent rights

since at least October 15, 2020, at least by performing acts of infringement with actual

knowledge of its direct and indirect infringement or while remaining willfully blind to the fact of

its direct and indirect infringement.  As a result of at least this conduct, Plaintiff is entitled to

enhanced damages under 35 U.S.C. § 284 and to attorneys' fees and costs under 35 U.S.C. § 285.

160.     Ocean Semiconductor reserves the right to modify its infringement theories as

discovery progresses in this case.  Ocean Semiconductor shall not be estopped or otherwise

limited or restricted for purposes of its infringement contentions or its claim constructions by the

claim charts that it provides with this Complaint.  Ocean Semiconductor intends the claim chart

(Exhibits O and P) for the '248 patent to satisfy the notice requirements of Rule 8(a)(2) of the

Federal Rule of Civil Procedure.  The claim chart is not Ocean Semiconductor's preliminary or

final infringement contentions or preliminary or final claim construction positions.

## COUNT V: INFRINGEMENT OF THE '170 PATENT

161.     Ocean Semiconductor repeats and re-alleges the allegations of the above

paragraphs as if fully set forth herein.

162.     At least as of November 25, 2020, Ocean Semiconductor placed NVIDIA on

actual notice of the '170 patent and actual notice that its actions constituted and continued to

constitute infringement of the '170 patent.  NVIDIA has had actual knowledge of the '170 patent

and its own infringement of the '170 patent since at least that time.

163.     NVIDIA has directly infringed and continues to infringe at least claim 1 of the

'170 patent literally or under the doctrine of equivalents, by importing into the United States,

and/or using, and/or selling, and/or offering for sale in the United States, without authority or

license, systems, products, devices, and/or integrated circuits that are designed, developed,

51

fabricated, and/or manufactured with an integrated circuit package comprising a stiffener with a bottom surface coupled to a substrate and having a space at least partly surrounding a passive electronic component including at least the NVIDIA Stiffener Products ("'170 Accused Products") in violation of 35 U.S.C. § 271.  The '170 Accused Products are manufactured and/or fabricated with an integrated circuit package including all of the limitations of at least claim 1 of the '170 patent.  Each such product includes an integrated circuit fabricated or manufactured with an integrated circuit package comprising a stiffener with a bottom surface coupled to a substrate and having a space at least partly surrounding a passive electronic component.

164.    Discovery is expected to uncover the full extent of NVIDIA's infringement of the '170 patent beyond the '170 Accused Products already identified herein.

165.    On information and belief, NVIDIA has directly infringed and continues to infringe at least claim 1 of the '170 patent literally or under the doctrine of equivalents, by importing into the United States, and/or using, and/or selling, and/or offering for sale in the United States, without authority or license, the '170 Accused Products, in violation of 35 U.S.C. § 271(g).  On information and belief, NVIDIA imports the '170 Accused Products into the United States for sales and distribution to customers located in the United States.  On information and belief, NVIDIA sells and/or offers for sale the '170 Accused Products in the United States.  For example, NVIDIA provides direct sales through its own sales channels and/or its distributors or contract manufacturers and sells the '170 Accused Products to businesses including original equipment manufacturers and electronic manufacturing service providers.  On information and belief, these direct sales include sales of the '170 Accused Products in the United States.  On information and belief, NVIDIA offers the '170 Accused Products for sale in

the United States.  For example, NVIDIA engages in sales, marketing, and contracting activity in the United States and/or with United States offices of its customers.

166.    The '170 Accused Products are manufactured with an integrated circuit package that includes all of the limitations of at least claim 1 of the '170 patent.

167.    For example, each of the '170 Accused Products includes an integrated circuit package, comprising: a substrate; a packaged integrated chip coupled to the substrate; at least one passive electronic component coupled to the substrate; and a stiffener comprising a top surface and a bottom surface, the bottom surface coupled to the substrate and having a space at least partly surrounding the at least one passive electronic component.  On information and belief, NVIDIA, directly or through one of its Foundry Partners, designs, develops, or manufactures the '170 Accused Products that include the claimed integrated circuit package.

168.    Attached hereto as Exhibit Q, and incorporated by reference herein, is a claim chart detailing how each of the '170 Accused Products is manufactured with the claimed integrated circuit package by a NVIDIA Foundry Partner on behalf of NVIDIA that satisfies each element of at least claim 1 of the '170 patent, literally or under the doctrine of equivalents.

169.    On information and belief, at least as of November 25, 2020, NVIDIA has induced and continues to induce others, including its suppliers and contract manufacturers, to infringe one or more claims of the '170 patent, including, but not limited to, claim 1, pursuant to 35 U.S.C. § 271(b), by actively encouraging others to import into the United States, and/or make, use, sell, and/or offer to sell in the United States, the '170 Accused Products or products containing the infringing semiconductor components of the '170 Accused Products, by actively inducing others to infringe the '170 patent by making, using, selling, offering for sale, marketing, advertising, and/or importing the Accused Products to their customers for use in downstream

products that infringe, or were manufactured using processes that infringe, the '170 patent, and by instructing others to infringe the '170 patent.

170.    For example, NVIDIA actively promotes the sale, use, and importation of the '170 Accused Products in marketing materials, technical specifications, data sheets, web pages on its website (e.g., www.nvidia.com), press releases, training tutorials, development and design tools, user manuals, and developer forums as well as at trade shows (e.g., the Consumer Technology Association's Consumer Electronics Show ("CES")) and NVIDIA's online Discussion Forums for GeForce products and developers) and through its sales and distribution channels that encourage infringing uses, sales, offers to sell, and importation of the '170 Accused Products.  As another example, NVIDIA's representatives travel to customer sites in the United States for sales and support activity that includes working with customers to facilitate these customers' infringing testing, marketing, importation, and sales activity.  On information and belief, NVIDIA supplies customers with '170 Accused Products so that they may be used, sold, or offered for sale by those customers.  For example, NVIDIA provides direct sales to original equipment manufacturers and electronic manufacturing service providers.  On information and belief, these direct sales include sales to customers in the United States.  NVIDIA also promotes, publicly on its website, uses of the '170 Accused Products by customers in the United States. NVIDIA additionally provides a wide range of technical support to customers and businesses, including product-specific solutions.  NVIDIA also encourages customers and other third parties to communicate directly with NVIDIA representatives about these products for purposes of technical assistance and repair (e.g., https://www.nvidia.com/en-us/support/enterprise/ and https://www.nvidia.com/en-us/support/consumer/).

171.    On information and belief, NVIDIA sells or offers for sale the '170 Accused Products to third parties that incorporate the '170 Accused Products into third party products ("the '170 Third Party Products").

172.    On information and belief, NVIDIA assists third parties, directly and/or through intermediaries, in the development of the '170 Third Party Products and provides technical support and supports the sales of the '170 Third Party Products.

173.    On information and belief, at least as of November 25, 2020, NVIDIA has induced and continues to induce third parties with specific intent or willful blindness to import, make, use, sell, and/or offer to sell '170 Third Party Products that include at least one '170 Accused Product fabricated or manufactured with the claimed integrated circuit package whose make, use, sale, offer for sale, or importation constitutes direct infringement of at least one claim of the '170 patent.

174.    On information and belief, the '170 Third Party Products are imported into the United States for use, sale, and/or offer for sale in this District and throughout the United States ("Imported '170 Third Party Products").

175.    On information and belief, to the extent any entity other than NVIDIA, including but not limited to any of NVIDIA's Foundry Partners or third-party importers, imports the '170 Accused Products and/or Imported '170 Third-Party Products into the United States for or on behalf of NVIDIA ("Third Party Importer"), NVIDIA is liable for inducement of infringement by the Third Party Importer.  NVIDIA has encouraged the Third Party Importer to infringe the '170 patent and intended that it do so.  This encouragement includes at least ordering or instructing the Third Party Importer to import the '170 Accused Products and/or '170 Third-Party Products into the United States, providing directions and other materials to the Third Party

Importer to enable such importation, and/or conditioning the receipt of benefits (included but not limited to payment) to the Third Party Importer on such importation.  On information and belief, this behavior has continued since Defendant first became aware of the '170 patent and the infringement thereof.

176.    On information and belief, to the extent any entity other than NVIDIA, including but not limited to any of NVIDIA's Foundry Partners, fabricates or manufactures the '170 Accused Products and/or Imported '170 Third-Party Products in the United States for or on behalf of NVIDIA ("Third Party Manufacturer"), NVIDIA is liable for inducement of infringement by the Third Party Manufacturer.  NVIDIA has encouraged the Third Party Manufacturer to infringe the '170 patent and intended that it do so.  This encouragement includes, without limitation, ordering the '170 Accused Products from the Third Party Manufacturer since Defendant first became aware of the '170 patent and its infringement by the Third Party Manufacturer.

177.    NVIDIA has benefitted and continues to benefit from the importation into the United States of the '170 Accused Products, '170 Third Party Products, and Imported '170 Third Party Products.

178.    Ocean Semiconductor has suffered, and continues to suffer, damages as a result of NVIDIA's infringement of the '170 patent.

179.    NVIDIA has continued to infringe the '170 patent since at least November 25, 2020, despite being on notice of the '170 patent and its infringement.  NVIDIA has therefore infringed the '170 patent knowingly, willfully, deliberately, and in disregard of Plaintiff's patent rights since at least November 25, 2020, at least by performing acts of infringement with actual knowledge of its direct and indirect infringement or while remaining willfully blind to the fact of

its direct and indirect infringement.  As a result of at least this conduct, Plaintiff is entitled to

enhanced damages under 35 U.S.C. § 284 and to attorneys' fees and costs under 35 U.S.C. § 285.

180.    Ocean Semiconductor reserves the right to modify its infringement theories as

discovery progresses in this case.  Ocean Semiconductor shall not be estopped or otherwise

limited or restricted for purposes of its infringement contentions or its claim constructions by the

claim charts that it provides with this Complaint.  Ocean Semiconductor intends for the claim

chart (Exhibit Q) for the '170 patent to satisfy the notice requirements of Rule 8(a)(2) of the

Federal Rule of Civil Procedure.  The claim chart is not Ocean Semiconductor's preliminary or

final infringement contentions or preliminary or final claim construction positions.

## COUNT VI: INFRINGEMENT OF THE '383 PATENT

181.    Ocean Semiconductor repeats and re-alleges the allegations of the above

paragraphs as if fully set forth herein.

182.    At least as of October 15, 2020, Ocean Semiconductor placed NVIDIA on actual

notice of the '383 patent and actual notice that its actions constituted and continued to constitute

infringement of the '383 patent.  NVIDIA has had actual knowledge of the '383 patent and its

own infringement of the '383 patent since at least that time.

183.    NVIDIA has directly infringed and continues to infringe at least claim 1 of the

'383 patent literally or under the doctrine of equivalents, by importing into the United States,

and/or using, and/or selling, and/or offering for sale in the United States, without authority or

license, systems, products, devices, and/or integrated circuits that are designed, developed,

fabricated, and/or manufactured with an integrated circuit package strip with at least one

integrated circuit package in the strip having four lateral sections that surround a stiffener and

where at least two of the four lateral sections are shared with different integrated circuit packages

along the strip including at least the NVIDIA Strip Package Products ("'383 Accused Products") in violation of 35 U.S.C. § 271.  The '383 Accused Products are manufactured and/or fabricated with an integrated circuit package strip including all of the limitations of at least claim 1 of the '383 patent.  Each such product includes an integrated circuit fabricated or manufactured with an integrated circuit package strip comprising a stiffener with a bottom surface coupled to a substrate and having a space at least partly surrounding a passive electronic component coupled to the substrate.

184.    Discovery is expected to uncover the full extent of NVIDIA's infringement of the '383 patent beyond the '383 Accused Products already identified herein.

185.    On information and belief, NVIDIA has directly infringed and continues to infringe at least claim 1 of the '383 patent literally or under the doctrine of equivalents, by importing into the United States, and/or using, and/or selling, and/or offering for sale in the United States, without authority or license, the '383 Accused Products, in violation of 35 U.S.C. § 271(g).  On information and belief, NVIDIA imports the '383 Accused Products into the United States for sales and distribution to customers located in the United States.  On information and belief, NVIDIA sells and/or offers for sale the '383 Accused Products in the United States.  For example, NVIDIA provides direct sales through its own sales channels and/or its distributors or contract manufacturers and sells the '383 Accused Products to businesses including original equipment manufacturers and electronic manufacturing service providers.  On information and belief, these direct sales include sales of the '383 Accused Products in the United States.  On information and belief, NVIDIA offers the '383 Accused Products for sale in the United States.  For example, NVIDIA engages in sales, marketing, and contracting activity in the United States and/or with United States offices of its customers.

186.     The '383 Accused Products are manufactured with an integrated circuit package strip that includes all of the limitations of at least claim 1 of the '383 patent.

187.     For example, each of the '383 Accused Products includes an integrated circuit package, comprising: a plurality of integrated circuit packages, wherein at least one integrated circuit package in the strip has four lateral sections that surround a stiffener and where the integrated circuit package shares at least two of the four lateral sections with different integrated circuit packages along the strip, wherein the stiffener comprising a top surface and a bottom surface, the bottom surface coupled to the substrate and having a space at least partly surrounding at least one passive electronic component coupled to a substrate.  On information and belief, NVIDIA, directly or through one of its Foundry Partners, designs, develops, or manufactures the '383 Accused Products that include the claimed integrated circuit package.

188.     Attached hereto as Exhibit R, and incorporated by reference herein, is a claim chart detailing how each of the '383 Accused Products is manufactured with the claimed integrated circuit package strip by a NVIDIA Foundry Partner on behalf of NVIDIA that satisfies each element of at least claim 1 of the '383 patent, literally or under the doctrine of equivalents.

189.     On information and belief, at least as of October 15, 2020, NVIDIA has induced and continues to induce others, including its suppliers and contract manufacturers, to infringe one or more claims of the '383 patent, including, but not limited to, claim 1, pursuant to 35 U.S.C. § 271(b), by actively encouraging others to import into the United States, and/or make, use, sell, and/or offer to sell in the United States, the '383 Accused Products or products containing the infringing semiconductor components of the '383 Accused Products, by actively inducing others to infringe the '383 patent by making, using, selling, offering for sale, marketing, advertising, and/or importing the Accused Products to their customers for use in downstream

products that infringe, or were manufactured using processes that infringe, the '383 patent, and by instructing others to infringe the '383 patent.

190. For example, NVIDIA actively promotes the sale, use, and importation of the '383 Accused Products in marketing materials, technical specifications, data sheets, web pages on its website (e.g., www.nvidia.com), press releases, training tutorials, development and design tools, user manuals, and developer forums as well as at trade shows (e.g., the Consumer Technology Association's Consumer Electronics Show ("CES")) and NVIDIA's online Discussion Forums for GeForce products and developers) and through its sales and distribution channels that encourage infringing uses, sales, offers to sell, and importation of the '383 Accused Products. As another example, NVIDIA's representatives travel to customer sites in the United States for sales and support activity that includes working with customers to facilitate these customers' infringing testing, marketing, importation, and sales activity. On information and belief, NVIDIA supplies customers with '383 Accused Products so that they may be used, sold, or offered for sale by those customers. For example, NVIDIA provides direct sales to original equipment manufacturers and electronic manufacturing service providers. On information and belief, these direct sales include sales to customers in the United States. NVIDIA also promotes, publicly on its website, uses of the '383 Accused Products by customers in the United States. NVIDIA additionally provides a wide range of technical support to customers and businesses, including product-specific solutions. NVIDIA also encourages customers and other third parties to communicate directly with NVIDIA representatives about these products for purposes of technical assistance and repair (e.g., https://www.nvidia.com/en-us/support/enterprise/ and https://www.nvidia.com/en-us/support/consumer/).

191.    On information and belief, NVIDIA sells or offers for sale the '383 Accused Products to third parties that incorporate the '383 Accused Products into third party products ("the '383 Third Party Products").

192.    On information and belief, NVIDIA assists third parties, directly and/or through intermediaries, in the development of the '383 Third Party Products and provides technical support and supports the sales of the '383 Third Party Products.

193.    On information and belief, at least as of October 15, 2020, NVIDIA has induced and continues to induce third parties with specific intent or willful blindness to import, make, use, sell, and/or offer to sell '383 Third Party Products that include at least one '383 Accused Product fabricated or manufactured with the claimed integrated circuit package whose make, use, sale, offer for sale, or importation constitutes direct infringement of at least one claim of the '383 patent.

194.    On information and belief, the '383 Third Party Products are imported into the United States for use, sale, and/or offer for sale in this District and throughout the United States ("Imported '383 Third Party Products").

195.    On information and belief, to the extent any entity other than NVIDIA, including but not limited to any of NVIDIA's Foundry Partners or third-party importers, imports the '383 Accused Products and/or Imported '383 Third-Party Products into the United States for or on behalf of NVIDIA ("Third Party Importer"), NVIDIA is liable for inducement of infringement by the Third Party Importer.  NVIDIA has encouraged the Third Party Importer to infringe the '383 patent and intended that it do so.  This encouragement includes at least ordering or instructing the Third Party Importer to import the '383 Accused Products and/or '383 Third-Party Products into the United States, providing directions and other materials to the Third Party

Importer to enable such importation, and/or conditioning the receipt of benefits (included but not limited to payment) to the Third Party Importer on such importation. On information and belief, this behavior has continued since Defendant first became aware of the '383 patent and the infringement thereof.

196. On information and belief, to the extent any entity other than NVIDIA, including but not limited to any of NVIDIA's Foundry Partners, fabricates or manufactures the '383 Accused Products and/or Imported '383 Third-Party Products in the United States for or on behalf of NVIDIA ("Third Party Manufacturer"), NVIDIA is liable for inducement of infringement by the Third Party Manufacturer. NVIDIA has encouraged the Third Party Manufacturer to infringe the '383 patent and intended that it do so. This encouragement includes, without limitation, ordering the '383 Accused Products from the Third Party Manufacturer since Defendant first became aware of the '383 patent and its infringement by the Third Party Manufacturer.

197. NVIDIA has benefitted and continues to benefit from the importation into the United States of the '383 Accused Products, '383 Third Party Products, and Imported '383 Third Party Products.

198. Ocean Semiconductor has suffered, and continues to suffer, damages as a result of NVIDIA's infringement of the '383 patent.

199. NVIDIA has continued to infringe the '383 patent since at least October 15, 2020, despite being on notice of the '383 patent and its infringement. NVIDIA has therefore infringed the '383 patent knowingly, willfully, deliberately, and in disregard of Plaintiff's patent rights since at least October 15, 2020, at least by performing acts of infringement with actual knowledge of its direct and indirect infringement or while remaining willfully blind to the fact of

its direct and indirect infringement.  As a result of at least this conduct, Plaintiff is entitled to

enhanced damages under 35 U.S.C. § 284 and to attorneys' fees and costs under 35 U.S.C. § 285.

200.    Ocean Semiconductor reserves the right to modify its infringement theories as

discovery progresses in this case.  Ocean Semiconductor shall not be estopped or otherwise

limited or restricted for purposes of its infringement contentions or its claim constructions by the

claim charts that it provides with this Complaint.  Ocean Semiconductor intends for the claim

chart (Exhibit R) for the '383 patent to satisfy the notice requirements of Rule 8(a)(2) of the

Federal Rule of Civil Procedure.  The claim chart is not Ocean Semiconductor's preliminary or

final infringement contentions or preliminary or final claim construction positions.

## COUNT VII: INFRINGEMENT OF THE '330 PATENT

201.    Ocean Semiconductor repeats and re-alleges the allegations of the above

paragraphs as if fully set forth herein.

202.    At least as of November 25, 2020, Ocean Semiconductor placed NVIDIA on

actual notice of the '330 patent and actual notice that its actions constituted and continued to

constitute infringement of the '330 patent.  NVIDIA has had actual knowledge of the '330 patent

and its own infringement of the '330 patent since at least that time.

203.    NVIDIA has directly infringed and continues to infringe at least claim 19 of the

'330 patent literally or under the doctrine of equivalents, by importing into the United States,

and/or using, and/or selling, and/or offering for sale in the United States, without authority or

license, integrated circuits that are designed, developed, fabricated, and/or manufactured using

the ASML YieldStar metrology and inspection system or platform and/or similar systems (e.g.,

with similar technical and functional features), and systems, products, and/or devices containing

these integrated circuits including at least the NVIDIA YieldStar Products ("'330 Accused

Products") in violation of 35 U.S.C. § 271.  The '330 Accused Products are manufactured by a process including all of the limitations of at least claim 19 of the '330 patent.  Each such product includes an integrated circuit fabricated or manufactured using, for example, the ASML YieldStar metrology and inspection system or platform.

204.    Discovery is expected to uncover the full extent of NVIDIA's infringement of the '330 patent beyond the '330 Accused Products already identified herein.

205.    On information and belief, NVIDIA has directly infringed and continues to infringe at least claim 19 of the '330 patent literally or under the doctrine of equivalents, by importing into the United States, and/or using, and/or selling, and/or offering for sale in the United States, without authority or license, the '330 Accused Products, in violation of 35 U.S.C. § 271(g).  On information and belief, NVIDIA imports the '330 Accused Products into the United States for sales and distribution to customers located in the United States.  On information and belief, NVIDIA sells and/or offers for sale the '330 Accused Products in the United States.  For example, NVIDIA provides direct sales through its own sales channels and/or its distributors or contract manufacturers and sells the '330 Accused Products to businesses including original equipment manufacturers and electronic manufacturing service providers.  On information and belief, these direct sales include sales of the '330 Accused Products in the United States.  On information and belief, NVIDIA offers the '330 Accused Products for sale in the United States.  For example, NVIDIA engages in sales, marketing, and contracting activity in the United States and/or with United States offices of its customers.

206.    The '330 Accused Products are manufactured by a process including all of the limitations of at least claim 19 of the '330 patent.  The '330 Accused Products are made by a

claimed method.  Each is an integrated circuit fabricated or manufactured using, for example, ASML's YieldStar metrology and inspection system hardware and software.

207.     For example, during the manufacture of the '330 Accused Products, a plurality of wafers undergoing the fabrication process is provided.  The plurality of wafers are mapped into one or more logical grids comprising one or more portions in which a grating structure for use in concurrent measurements is formed.  Concurrently, one or more critical dimensions and overlay in a wafer undergoing the fabrication process are measured.  It is determined if one or more of the critical dimensions are outside of acceptable tolerances, and whether an overlay error is occurring.  Control data based upon one or more concurrent measurements is developed when at least one of an overlay error is occurring and one or more of the critical dimensions fall outside of acceptable tolerances.  The control data is fed forward or backward to adjust one or more fabrication components or one or more operating parameters associated with the fabrication components when at least one of an overlay error is occurring and one or more of the critical dimensions fall outside of acceptable tolerances to mitigate overlay error and/or to bring critical dimension within acceptable tolerances.  On information and belief, NVIDIA, directly or through one of its Foundry Partners (e.g., TSMC and/or UMC), contracted with ASML to use this process to design, develop, or manufacture the '330 Accused Products.

208.     Attached hereto as Exhibit S, and incorporated by reference herein, is a claim chart detailing how each of the '330 Accused Products is manufactured using the ASML YieldStar metrology and inspection system or platform by a NVIDIA Foundry Partner on behalf of NVIDIA (e.g., TSMC and/or UMC) that satisfies each element of at least independent claim 19 of the '330 patent, literally or under the doctrine of equivalents.

209.    On information and belief, the '330 Accused Products are neither materially changed by subsequent processes nor become trivial and nonessential components of another product.

210.    On information and belief, at least as of November 25, 2020, NVIDIA has induced and continues to induce others, including its suppliers and contract manufacturers, to infringe one or more claims of the '330 patent, including, but not limited to, claim 19, pursuant to 35 U.S.C. § 271(b), by actively encouraging others to import into the United States, and/or make, use, sell, and/or offer to sell in the United States, the '330 Accused Products or products containing the infringing semiconductor components of the '330 Accused Products, by actively inducing others to infringe the '330 patent by making, using, selling, offering for sale, marketing, advertising, and/or importing the Accused Products to their customers for use in downstream products that infringe, or were manufactured using processes that infringe, the '330 patent, and by instructing others to infringe the '330 patent.

211.    For example, NVIDIA actively promotes the sale, use, and importation of the '330 Accused Products in marketing materials, technical specifications, data sheets, web pages on its website (e.g., www.nvidia.com), press releases, training tutorials, development and design tools, user manuals, and developer forums as well as at trade shows (e.g., the Consumer Technology Association's Consumer Electronics Show ("CES")) and NVIDIA's online Discussion Forums for GeForce products and developers) and through its sales and distribution channels that encourage infringing uses, sales, offers to sell, and importation of the '330 Accused Products.  As another example, NVIDIA's representatives travel to customer sites in the United States for sales and support activity that includes working with customers to facilitate these customers' infringing testing, marketing, importation, and sales activity.  On information and

belief, NVIDIA supplies customers with '330 Accused Products so that they may be used, sold, or offered for sale by those customers.  For example, NVIDIA provides direct sales to original equipment manufacturers and electronic manufacturing service providers.  On information and belief, these direct sales include sales to customers in the United States.  NVIDIA also promotes, publicly on its website, uses of the '330 Accused Products by customers in the United States. NVIDIA additionally provides a wide range of technical support to customers and businesses, including product-specific solutions.  NVIDIA also encourages customers and other third parties to communicate directly with NVIDIA representatives about these products for purposes of technical assistance and repair (e.g., https://www.nvidia.com/en-us/support/enterprise/ and https://www.nvidia.com/en-us/support/consumer/).

212.    On information and belief, NVIDIA sells or offers for sale the '330 Accused Products to third parties that incorporate the '330 Accused Products into third party products ("the '330 Third Party Products").

213.    On information and belief, NVIDIA assists third parties, directly and/or through intermediaries, in the development of the '330 Third Party Products and provides technical support and supports the sales of the '330 Third Party Products.

214.    On information and belief, at least as of November 25, 2020, NVIDIA has induced and continues to induce third parties with specific intent or willful blindness to import, make, use, sell, and/or offer to sell '330 Third Party Products that include at least one '330 Accused Product fabricated or manufactured using the ASML YieldStar metrology and inspection system or platform, or similar systems (e.g., with similar technical and functional features), whose make, use, sale, offer for sale, or importation constitutes direct infringement of at least one claim of the '330 patent.

67

215.    On information and belief, the '330 Third Party Products are imported into the United States for use, sale, and/or offer for sale in this District and throughout the United States ("Imported '330 Third Party Products").

216.    On information and belief, to the extent any entity other than NVIDIA, including but not limited to any of NVIDIA's Foundry Partners or third-party importers, imports the '330 Accused Products and/or Imported '330 Third-Party Products into the United States for or on behalf of NVIDIA ("Third Party Importer"), NVIDIA is liable for inducement of infringement by the Third Party Importer.  NVIDIA has encouraged the Third Party Importer to infringe the '330 patent and intended that it do so.  This encouragement includes at least ordering or instructing the Third Party Importer to import the '330 Accused Products and/or '330 Third-Party Products into the United States, providing directions and other materials to the Third Party Importer to enable such importation, and/or conditioning the receipt of benefits (included but not limited to payment) to the Third Party Importer on such importation.  On information and belief, this behavior has continued since Defendant first became aware of the '330 patent and the infringement thereof.

217.    On information and belief, to the extent any entity other than NVIDIA, including but not limited to any of NVIDIA's Foundry Partners, uses the patented method to fabricate or manufacture the '330 Accused Products and/or Imported '330 Third-Party Products in the United States for or on behalf of NVIDIA ("Third Party Manufacturer"), NVIDIA is liable for inducement of infringement by the Third Party Manufacturer.  NVIDIA has encouraged the Third Party Manufacturer to infringe the '330 patent and intended that it do so.  This encouragement includes, without limitation, ordering the '330 Accused Products from the Third

Party Manufacturer since Defendant first became aware of the '330 patent and its infringement by the Third Party Manufacturer.

218.    NVIDIA has benefitted and continues to benefit from the importation into the United States of the '330 Accused Products, '330 Third Party Products, and Imported '330 Third Party Products.

219.    Ocean Semiconductor has suffered, and continues to suffer, damages as a result of NVIDIA's infringement of the '330 patent.

220.    NVIDIA has continued to infringe the '330 patent since at least November 25, 2020, despite being on notice of the '330 patent and its infringement.  NVIDIA has therefore infringed the '330 patent knowingly, willfully, deliberately, and in disregard of Plaintiff's patent rights since at least November 25, 2020, at least by performing acts of infringement with actual knowledge of its direct and indirect infringement or while remaining willfully blind to the fact of its direct and indirect infringement.  As a result of at least this conduct, Plaintiff is entitled to enhanced damages under 35 U.S.C. § 284 and to attorneys' fees and costs under 35 U.S.C. § 285.

221.    Ocean Semiconductor reserves the right to modify its infringement theories as discovery progresses in this case.  Ocean Semiconductor shall not be estopped or otherwise limited or restricted for purposes of its infringement contentions or its claim constructions by the claim charts that it provides with this Complaint.  Ocean Semiconductor intends for the claim chart (Exhibit S) for the '330 patent to satisfy the notice requirements of Rule 8(a)(2) of the Federal Rule of Civil Procedure.  The claim chart is not Ocean Semiconductor's preliminary or final infringement contentions or preliminary or final claim construction positions.

## COUNT VI: INFRINGEMENT OF THE '691 PATENT

222.    Ocean Semiconductor repeats and re-alleges the allegations of the above paragraphs as if fully set forth herein.

223.    At least as of November 25, 2020, Ocean Semiconductor placed NVIDIA on actual notice of the '691 patent and actual notice that its actions constituted and continued to constitute infringement of the '691 patent.  NVIDIA has had actual knowledge of the '691 patent and its own infringement of the '691 patent since at least that time.

224.    NVIDIA has directly infringed and continues to infringe at least claim 1 of the '691 patent literally or under the doctrine of equivalents, by importing into the United States, and/or using, and/or selling, and/or offering for sale in the United States, without authority or license, integrated circuits designed, developed, fabricated, and/or manufactured using Applied Materials' E3 system, PDF Solutions' Exensio system, and/or similar systems (e.g., with similar technical and functional features), and systems, products, and/or devices containing these integrated circuits including at least the NVIDIA APC Products ("'691 Accused Products") in violation of 35 U.S.C. § 271.  The '691 Accused Products are manufactured by a process including all of the limitations of at least claim 1 of the '691 patent.  Each such product includes an integrated circuit fabricated or manufactured using, for example, Applied Materials' E3 system and/or PDF Solutions' Exensio system.

225.    Discovery is expected to uncover the full extent of NVIDIA's infringement of the '691 patent beyond the '691 Accused Products already identified herein.

226.    On information and belief, NVIDIA has directly infringed and continues to infringe at least claim 1 of the '691 patent literally or under the doctrine of equivalents, by importing into the United States, and/or using, and/or selling, and/or offering for sale in the

United States, without authority or license, the '691 Accused Products, in violation of 35 U.S.C. § 271(g).  On information and belief, NVIDIA imports the '691 Accused Products into the United States for sales and distribution to customers located in the United States.  On information and belief, NVIDIA sells and/or offers for sale the '691 Accused Products in the United States.  For example, NVIDIA provides direct sales through its own sales channels and/or its distributors or contract manufacturers and sells the '691 Accused Products to businesses including original equipment manufacturers and electronic manufacturing service providers.  On information and belief, these direct sales include sales of the '691 Accused Products in the United States.  On information and belief, NVIDIA offers the '691 Accused Products for sale in the United States.  For example, NVIDIA engages in sales, marketing, and contracting activity in the United States and/or with United States offices of its customers.

227.    The '691 Accused Products are manufactured by a process including all of the limitations of at least claim 1 of the '691 patent.  The '691 Accused Products are made by a claimed method.  Each is an integrated circuit fabricated or manufactured using, for example, Applied Materials' E3 system and/or PDF Solutions' Exensio system.  For example, during the manufacture of the '691 Accused Products (e.g., by Applied Materials' E3 system and/or PDF Solutions' Exensio system and/or similar systems (e.g., with similar technical and functional features)), metrology data related to the processing of workpieces in a plurality of tools is collected.  Context data for the metrology data, including collection purpose data, is collected.  The metrology data is filtered based on the collection purpose data.  A process control activity related to one of the tools is conducted based on the filtered metrology data.  On information and belief, NVIDIA, directly or through one of its Foundry Partners, contracted with Applied

Materials and/or PDF Solutions to use this process to design, develop, or manufacture the '691 Accused Products.

228.    Attached hereto as Exhibits T and U, and incorporated by reference herein, are claim charts detailing how each of the '691 Accused Products manufactured using the Applied Materials E3 system and/or PDF Solutions' Exensio system by a NVIDIA Foundry Partner on behalf of NVIDIA (e.g., TSMC and/or UMC) satisfies each element of at least claim 1 of the '691 patent, literally or under the doctrine of equivalents.

229.    On information and belief, the '691 Accused Products are neither materially changed by subsequent processes nor become trivial and nonessential components of another product.

230.    On information and belief, at least as of November 25, 2020, NVIDIA has induced and continues to induce others, including its suppliers and contract manufacturers, to infringe one or more claims of the '691 patent, including, but not limited to, claim 1, pursuant to 35 U.S.C. § 271(b), by actively encouraging others to import into the United States, and/or make, use, sell, and/or offer to sell in the United States, the '691 Accused Products or products containing the infringing semiconductor components of the '691 Accused Products, by actively inducing others to infringe the '691 patent by making, using, selling, offering for sale, marketing, advertising, and/or importing the Accused Products to their customers for use in downstream products that infringe, or were manufactured using processes that infringe, the '691 patent, and by instructing others to infringe the '691 patent.

231.    For example, NVIDIA actively promotes the sale, use, and importation of the '691 Accused Products in marketing materials, technical specifications, data sheets, web pages on its website (e.g., www.nvidia.com), press releases, training tutorials, development and design

tools, user manuals, and developer forums as well as at trade shows (e.g., the Consumer

Technology Association's Consumer Electronics Show ("CES")) and NVIDIA's online

Discussion Forums for GeForce products and developers) and through its sales and distribution

channels that encourage infringing uses, sales, offers to sell, and importation of the '691 Accused

Products.  As another example, NVIDIA's representatives travel to customer sites in the United

States for sales and support activity that includes working with customers to facilitate these

customers' infringing testing, marketing, importation, and sales activity.  On information and

belief, NVIDIA supplies customers with '691 Accused Products so that they may be used, sold,

or offered for sale by those customers.  For example, NVIDIA provides direct sales to original

equipment manufacturers and electronic manufacturing service providers.  On information and

belief, these direct sales include sales to customers in the United States.  NVIDIA also promotes,

publicly on its website, uses of the '691 Accused Products by customers in the United States.

NVIDIA additionally provides a wide range of technical support to customers and businesses,

including product-specific solutions.  NVIDIA also encourages customers and other third parties

to communicate directly with NVIDIA representatives about these products for purposes of

technical assistance and repair (e.g., https://www.nvidia.com/en-us/support/enterprise/ and

https://www.nvidia.com/en-us/support/consumer/).

232.    On information and belief, NVIDIA sells or offers for sale the '691 Accused

Products to third parties that incorporate the '691 Accused Products into third party products

("the '691 Third Party Products").

233.    On information and belief, NVIDIA assists third parties, directly and/or through

intermediaries, in the development and manufacture of the '691 Third Party Products and

provides technical support and supports the sales of the '691 Third Party Products.

234.     On information and belief, at least as of November 25, 2020, NVIDIA also has induced and continues to induce third parties with specific intent or willful blindness to import, make, use, sell, and/or offer to sell '691 Third Party Products that include at least one '691 Accused Product fabricated or manufactured using the Applied Materials E3 system and/or PDF Solutions' Exensio system and/or similar systems (e.g., with similar technical and functional features) whose make, use, sale, offer for sale, or importation constitutes direct infringement of at least one claim of the '691 patent.

235.     On information and belief, the '691 Third Party Products are imported into the United States for use, sale, and/or offer for sale in this District and throughout the United States ("Imported '691 Third Party Products").

236.     On information and belief, to the extent any entity other than NVIDIA, including but not limited to any of NVIDIA's Foundry Partners or third-party importers, imports the '691 Accused Products and/or Imported '691 Third-Party Products into the United States for or on behalf of NVIDIA ("Third Party Importer"), NVIDIA is liable for inducement of infringement by the Third Party Importer.  NVIDIA has encouraged the Third Party Importer to infringe the '691 patent and intended that it do so.  This encouragement includes at least ordering or instructing the Third Party Importer to import the '691 Accused Products and/or '691 Third-Party Products into the United States, providing directions and other materials to the Third Party Importer to enable such importation, and/or conditioning the receipt of benefits (included but not limited to payment) to the Third Party Importer on such importation.  On information and belief, this behavior has continued since Defendant first became aware of the '691 patent and the infringement thereof.

237.     On information and belief, to the extent any entity other than NVIDIA, including but not limited to any of NVIDIA's Foundry Partners, uses the patented method to fabricate or manufacture the '691 Accused Products and/or Imported '691 Third-Party Products in the United States for or on behalf of NVIDIA ("Third Party Manufacturer"), NVIDIA is liable for inducement of infringement by the Third Party Manufacturer.  NVIDIA has encouraged the Third Party Manufacturer to infringe the '691 patent and intended that it do so.  This encouragement includes, without limitation, ordering the '691 Accused Products from the Third Party Manufacturer since Defendant first became aware of the '691 patent and its infringement by the Third Party Manufacturer.

238.     NVIDIA has benefitted and continues to benefit from the importation into the United States of the Imported '691 Third Party Products.

239.     Ocean Semiconductor has suffered, and continues to suffer, damages as a result of NVIDIA's infringement of the '691 patent.

240.     NVIDIA has continued to infringe the '691 patent since at least November 25, 2020, despite being on notice of the '691 patent and its infringement.  NVIDIA has therefore infringed the '691 patent knowingly, willfully, deliberately, and in disregard of Plaintiff's patent rights since at least November 25, 2020, at least by performing acts of infringement with actual knowledge of its direct and indirect infringement or while remaining willfully blind to the fact of its direct and indirect infringement.  As a result of at least this conduct, Plaintiff is entitled to enhanced damages under 35 U.S.C. § 284 and to attorneys' fees and costs under 35 U.S.C. § 285.

241.     Ocean Semiconductor reserves the right to modify its infringement theories as discovery progresses in this case.  Ocean Semiconductor shall not be estopped or otherwise limited or restricted for purposes of its infringement contentions or its claim constructions by the

claim charts that it provides with this Complaint.  Ocean Semiconductor intends the claim chart

(Exhibits T and U) for the '691 patent to satisfy the notice requirements of Rule 8(a)(2) of the

Federal Rule of Civil Procedure.  The claim chart is not Ocean Semiconductor's preliminary or

final infringement contentions or preliminary or final claim construction positions.

## COUNT VII: INFRINGEMENT OF THE '538 PATENT

242.     Ocean Semiconductor repeats and re-alleges the allegations of the above

paragraphs as if fully set forth herein.

243.     At least as of November 25, 2020, Ocean Semiconductor placed NVIDIA on

actual notice of the '538 patent and actual notice that its actions constituted and continued to

constitute infringement of the '538 patent.  NVIDIA has had actual knowledge of the '538 patent

and its own infringement of the '538 patent since at least that time.

244.     NVIDIA has directly infringed and continues to infringe at least claim 1 of the

'538 patent literally or under the doctrine of equivalents, by importing into the United States,

and/or using, and/or selling, and/or offering for sale in the United States, without authority or

license, integrated circuits designed, developed, fabricated, and/or manufactured using Applied

Materials' E3 system and/or PDF Solutions' Exensio system and/or similar systems (e.g., with

similar technical and functional features), and systems, products, and/or devices containing these

integrated circuits including at least the NVIDIA APC Products ("'538 Accused Products") in

violation of 35 U.S.C. § 271.  The '538 Accused Products are manufactured by a process

including all of the limitations of at least claim 1 of the '538 patent.  Each such product includes

an integrated circuit fabricated or manufactured using, for example, Applied Materials' E3

system and/or PDF Solutions' Exensio system.

245.     Discovery is expected to uncover the full extent of NVIDIA's infringement of the '538 patent beyond the '538 Accused Products already identified herein.

246.     On information and belief, NVIDIA has directly infringed and continues to infringe at least claim 1 of the '538 patent literally or under the doctrine of equivalents, by importing into the United States, and/or using, and/or selling, and/or offering for sale in the United States, without authority or license, the '538 Accused Products, in violation of 35 U.S.C. § 271(g).  On information and belief, NVIDIA imports the '538 Accused Products into the United States for sales and distribution to customers located in the United States.  On information and belief, NVIDIA sells and/or offers for sale the '538 Accused Products in the United States.  For example, NVIDIA provides direct sales through its own sales channels and/or its distributors or contract manufacturers and sells the '538 Accused Products to businesses including original equipment manufacturers and electronic manufacturing service providers.  On information and belief, these direct sales include sales of the '538 Accused Products in the United States.  On information and belief, NVIDIA offers the '538 Accused Products for sale in the United States.  For example, NVIDIA engages in sales, marketing, and contracting activity in the United States and/or with United States offices of its customers.

247.     The '538 Accused Products are manufactured by a process including all of the limitations of at least claim 1 of the '538 patent.  The '538 Accused Products are made by a claimed method.  Each is an integrated circuit fabricated or manufactured using, for example, Applied Materials' E3 system and/or PDF Solutions' Exensio system.  For example, during the manufacture of the '538 Accused Products (e.g., by Applied Materials' E3 system and/or PDF Solutions' Exensio system (e.g., with similar technical and functional features)), a computer a fault detection analysis relating to processing of a workpiece is performed.  A relationship of a

parameter relating to said fault detection analysis to a detected fault is determined in the

computer.  A weighting of said parameter based upon said relationship of said parameter to said

detected fault is adjusted in said computer.  The fault detection analysis relating to processing of

a subsequent workpiece using said adjusted weighting is performed in said computer.  On

information and belief, NVIDIA, directly or through one of its Foundry Partners, contracted with

Applied Materials and/or PDF Solutions to use this process to design, develop, or manufacture

the '538 Accused Products.

248.    Attached hereto as Exhibits V and W, and incorporated by reference herein, are

claim charts detailing how each of the '538 Accused Products manufactured using the Applied

Materials E3 system and/or PDF Solutions' Exensio system by a NVIDIA Foundry Partner on

behalf of NVIDIA (e.g., TSMC and/or UMC) satisfies each element of at least claim 1 of the

'538 patent, literally or under the doctrine of equivalents.

249.    On information and belief, the '538 Accused Products are neither materially

changed by subsequent processes nor become trivial and nonessential components of another

product.

250.    On information and belief, at least as of November 25, 2020, NVIDIA has

induced and continues to induce others, including its suppliers and contract manufacturers, to

infringe one or more claims of the '538 patent, including, but not limited to, claim 1, pursuant to

35 U.S.C. § 271(b), by actively encouraging others to import into the United States, and/or make,

use, sell, and/or offer to sell in the United States, the '538 Accused Products or products

containing the infringing semiconductor components of the '538 Accused Products, by actively

inducing others to infringe the '538 patent by making, using, selling, offering for sale, marketing,

advertising, and/or importing the Accused Products to their customers for use in downstream

products that infringe, or were manufactured using processes that infringe, the '538 patent, and by instructing others to infringe the '538 patent.

251. For example, NVIDIA actively promotes the sale, use, and importation of the '538 Accused Products in marketing materials, technical specifications, data sheets, web pages on its website (e.g., www.nvidia.com), press releases, training tutorials, development and design tools, user manuals, and developer forums as well as at trade shows (e.g., the Consumer Technology Association's Consumer Electronics Show ("CES")) and NVIDIA's online Discussion Forums for GeForce products and developers) and through its sales and distribution channels that encourage infringing uses, sales, offers to sell, and importation of the '538 Accused Products. As another example, NVIDIA's representatives travel to customer sites in the United States for sales and support activity that includes working with customers to facilitate these customers' infringing testing, marketing, importation, and sales activity. On information and belief, NVIDIA supplies customers with '538 Accused Products so that they may be used, sold, or offered for sale by those customers. For example, NVIDIA provides direct sales to original equipment manufacturers and electronic manufacturing service providers. On information and belief, these direct sales include sales to customers in the United States. NVIDIA also promotes, publicly on its website, uses of the '538 Accused Products by customers in the United States. NVIDIA additionally provides a wide range of technical support to customers and businesses, including product-specific solutions. NVIDIA also encourages customers and other third parties to communicate directly with NVIDIA representatives about these products for purposes of technical assistance and repair (e.g., https://www.nvidia.com/en-us/support/enterprise/ and https://www.nvidia.com/en-us/support/consumer/).

252.    On information and belief, NVIDIA sells or offers for sale the '538 Accused Products to third parties that incorporate the '538 Accused Products into third party products ("the '538 Third Party Products").

253.    On information and belief, NVIDIA assists third parties, directly and/or through intermediaries, in the development and manufacture of the '538 Third Party Products and provides technical support and supports the sales of the '538 Third Party Products.

254.    On information and belief, at least as of November 25, 2020, NVIDIA also has induced and continues to induce third parties with specific intent or willful blindness to import, make, use, sell, and/or offer to sell '538 Third Party Products that include at least one '538 Accused Product fabricated or manufactured using the Applied Materials E3 system and/or PDF Solutions' Exensio system and/or similar systems (e.g., with similar technical and functional features) whose make, use, sale, offer for sale, or importation constitutes direct infringement of at least one claim of the '538 patent.

255.    On information and belief, the '538 Third Party Products are imported into the United States for use, sale, and/or offer for sale in this District and throughout the United States ("Imported '538 Third Party Products").

256.    On information and belief, to the extent any entity other than NVIDIA, including but not limited to any of NVIDIA's Foundry Partners or third-party importers, imports the '538 Accused Products and/or Imported '538 Third-Party Products into the United States for or on behalf of NVIDIA ("Third Party Importer"), NVIDIA is liable for inducement of infringement by the Third Party Importer.  NVIDIA has encouraged the Third Party Importer to infringe the '538 patent and intended that it do so.  This encouragement includes at least ordering or instructing the Third Party Importer to import the '538 Accused Products and/or '538 Third-

Party Products into the United States, providing directions and other materials to the Third Party Importer to enable such importation, and/or conditioning the receipt of benefits (included but not limited to payment) to the Third Party Importer on such importation.  On information and belief, this behavior has continued since Defendant first became aware of the '538 patent and the infringement thereof.

257.    On information and belief, to the extent any entity other than NVIDIA, including but not limited to any of NVIDIA's Foundry Partners, uses the patented method to fabricate or manufacture the '538 Accused Products and/or Imported '538 Third-Party Products in the United States for or on behalf of NVIDIA ("Third Party Manufacturer"), NVIDIA is liable for inducement of infringement by the Third Party Manufacturer.  NVIDIA has encouraged the Third Party Manufacturer to infringe the '538 patent and intended that it do so.  This encouragement includes, without limitation, ordering the '538 Accused Products from the Third Party Manufacturer since Defendant first became aware of the '538 patent and its infringement by the Third Party Manufacturer.

258.    NVIDIA has benefitted and continues to benefit from the importation into the United States of the Imported '538 Third Party Products.

259.    Ocean Semiconductor has suffered, and continues to suffer, damages as a result of NVIDIA's infringement of the '538 patent.

260.    NVIDIA has continued to infringe the '538 patent since at least November 25, 2020, despite being on notice of the '538 patent and its infringement.  NVIDIA has therefore infringed the '538 patent knowingly, willfully, deliberately, and in disregard of Plaintiff's patent rights since at least November 25, 2020, at least by performing acts of infringement with actual knowledge of its direct and indirect infringement or while remaining willfully blind to the fact of

its direct and indirect infringement.  As a result of at least this conduct, Plaintiff is entitled to enhanced damages under 35 U.S.C. § 284 and to attorneys' fees and costs under 35 U.S.C. § 285.

261.    Ocean Semiconductor reserves the right to modify its infringement theories as discovery progresses in this case.  Ocean Semiconductor shall not be estopped or otherwise limited or restricted for purposes of its infringement contentions or its claim constructions by the claim charts that it provides with this Complaint.  Ocean Semiconductor intends the claim chart (Exhibits V and W)  for the '538 patent to satisfy the notice requirements of Rule 8(a)(2) of the Federal Rule of Civil Procedure.  The claim chart is not Ocean Semiconductor's preliminary or final infringement contentions or preliminary or final claim construction positions.

## **RELIEF REQUESTED**

WHEREFORE, Ocean Semiconductor demands judgment for itself and against NVIDIA as follows:

A.    A judgment that Defendant NVIDIA has infringed, and continues to infringe, one or more claims of each of the Asserted Patents;

B.    A judgment that Defendant NVIDIA has induced infringement, and continues to induce infringement, of one or more claims of each of the Asserted Patents;

C.    A judgment that Defendant NVIDIA has contributed to, and continues to contribute to, the infringement of one or more claims of each of the Asserted Patents;

D.    A judgment awarding Ocean Semiconductor damages to be paid by Defendant NVIDIA in an amount to be proven at trial adequate to compensate Ocean Semiconductor for NVIDIA' past infringement and any continuing or future infringement through the date such judgment is entered, but in no event less than a reasonable royalty for NVIDIA's infringement;

E.      A judgment awarding Ocean Semiconductor treble damages pursuant to 35 U.S.C. § 284 as a result of Defendant NVIDIA's willfulness;

F.      A judgment and order finding that this case is exceptional and awarding Ocean Semiconductor its reasonable attorneys' fees to be paid by Defendant NVIDIA as provided by 35 U.S.C. § 285;

G.      A judgment awarding expenses, costs, and disbursements in this action against Defendant NVIDIA, including pre-judgment and post-judgment interest; and

H.      A judgment awarding Ocean Semiconductor such other relief as the Court may deem just and equitable.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff hereby demands a trial by jury on all issues so triable.

Dated:  December 31, 2020                          Respectfully submitted,

By:   /s/ Alex Chan
Timothy Devlin (*pro hac vice* forthcoming)
tdevlin@devlinlawfirm.com
Alex Chan
State Bar No. 24108051
achan@devlinlawfirm.com
DEVLIN LAW FIRM LLC
1526 Gilpin Avenue
Wilmington, Delaware 19806
Telephone: (302) 449-9010
Facsimile: (302) 353-4251

*Attorneys for Plaintiff,*
*Ocean Semiconductor LLC*